CRAIN, Judge.
In this survivorship and wrongful death action grounded on medical malpractice, defendants, Lallie Kemp Regional Hospital (hereafter “Lallie Kemp”), Charity Hospital of New Orleans (hereafter “Charity”) and the State of Louisiana through the Division of Administration and the Department of Health and Human Resources (hereafter “State”) appeal a judgment of the district court, which awarded plaintiffs, the heirs of Murphy Steptoe, damages in the amount of $643,297. Finding merit with one of the assignments of error raised by defendants, we reverse the judgment of the district court and dismiss plaintiffs’ action at their costs.
The facts out of which this incident arose are those reflected by the record and recited by this court in a prior unpublished opinion (Steptoe v. Great Global Assurance Co., Doc.No. 86 CA 1402, Nov. 13, 1987), as follows:
On September 6, 1985, Julius Quinn, while in the course and scope of his employment as a police officer for the Town of Amite, was proceeding north on Highway 51 in Amite, Louisiana. At the same time, Murphy “Crow” Steptoe, Jr. was proceeding east on Sycamore Street.
Traffic at the intersection of Highway 51 and Sycamore Street is controlled by stop signs on Sycamore Street. As Quinn approached the intersection, the Steptoe vehicle entered the intersection, collided with the police car, and Steptoe sustained injuries. Steptoe subsequently died as a result of the injuries he sustained in this collision.
On October 3, 1985, the wife and children of the late Murphy Steptoe Jr. filed suit seeking damages for survivorship and wrongful death against Julius Quinn, his employer, the Town of Amite, and their insurers. Defendants denied the allega *1010 tions of negligence on their part and offered as a defense the negligence of the decedent in driving while intoxicated, running a stop sign and failing to yield the right of way.
The bifurcated trial,[1] held in early June, 1986, resulted in a jury verdict in favor of Great Global Assurance Company. The jury found that Julius Quinn was at fault but his fault was not a proximate cause of the accident. The trial judge found Julius Quinn was negligent and his negligence was a cause in fact of the accident, resulting in the liability of his employer, the Town of Amite. The trial judge further found that Mr. Steptoe was 35% at fault in causing the accident and injuries. The court rendered judgment in the total amount of $548,825.00 and reduced that sum by 35% in accordance with his finding that Quinn’s negligence was a cause of the accident. Hence, a judgment for $356,-736.25 was rendered in favor of the widow and children of the late Mr. Steptoe and against the Town of Amite and Julius Quinn for survivorship benefits and wrongful death damages.
On June 16, 1986, plaintiffs filed a motion for a new trial and judgment notwithstanding the verdict requesting a new trial because the jury’s verdict was contrary to the law and evidence. Alternatively, they sought a judgment notwithstanding the verdict to reverse the jury verdict and reconcile it with the judgment rendered by the trial judge. On September 11, 1986, the trial judge granted the judgment notwithstanding the verdict and made the jury verdict conform with the judgment that he had already signed by holding the insurer of the Town of Amite liable. Defendants appealed.
On August 18, 1986, the widow and children of Murphy Steptoe, Jr. filed a “petition for damages and wrongful death” against the hospitals and physicians who had treated Mr. Steptoe in his last illness. This petition sought survivorship benefits and damages for wrongful death as a result of medical malpractice. It was filed of record under the same docket number and in the same division as the plaintiffs’ prior suit (Doc.No. 76,727, in the Twenty-First Judicial District Court).
On November 13, 1987, this Court in an unpublished opinion (Doc.No. 86 CA 1402) affirmed the judgment of the lower court rendered September 11, 1986. An application for supervisory writs was denied by the Louisiana Supreme Court on March 11, 1988 (Doc.No. 88 C 0298). This judgment’s award was paid to the widow and children of Mr. Steptoe. Satisfactions of Judgment were filed of record for each of the plaintiffs during the first week of April, 1988.
On August 30, 1991, the various defendants, in this suit grounded on medical malpractice, filed peremptory exceptions raising the objections of no cause and no right of action, wherein they alleged the following:
a) That the injury to these plaintiffs has been fully repaired by the accident defendants, and this satisfaction of the obligation to the plaintiffs absolutely released the medical defendants as in solido obligors;
b) That the proper parties to seek contribution from the medical defendants are not the plaintiffs and therefore, plaintiffs have no standing to sue these defendants; ...
The objections were apparently denied and the reasons for this decision deferred to the merits.
On February 23, 1990, defendants filed a motion and memorandum in support of summary judgment wherein they alleged that there was no genuine issue of material fact and that they were entitled to judgment as a matter of law in that the plaintiffs had already been fully compensated for their survival action and the wrongful death of Murphy Steptoe by the former defendants who were solidary obligors with the current defendants.
On December 10, 1990, the district court denied defendants’ motion for summary judgment. An application for supervisory writs was denied by this court on April 3, 1991 (91 CW 0139) wherein the Court “de *1011 cline[d] to exercise its supervisory jurisdiction “as” [t]he relator has an adequate remedy by review on appeal ...”
On August 20, 1991, the defendants filed a second amended answer wherein they raised this defense of satisfaction of judgment by the solidary obligors.
A trial on the merits was held during the week of September 23, 1991. On December 9, 1991, a judgment was rendered awarding plaintiffs damages for the surviv-orship action and wrongful death, on the basis of these defendants’ medical malpractice. The judgment was in the total amount of $648,297.00 plus costs and expert fees.
In his reasons for judgment rendered November 20, 1991, the trial judge also denied defendants’ peremptory exceptions. This timely appeal followed.
On appeal, defendants raise three assignments of error: 1) the trial court erred in denying defendants’ exception of no cause of action; 2) the trial court erred in finding that plaintiffs have a right of action in the instant case; and, 3) the trial court erred in finding medical malpractice on the part of the defendants.
Finding merit with defendants’ second assignment of error, we pretermit a discussion of the remaining assignments of error.[2]
In the second assignment of error defendants contend that the plaintiffs have no right of action and the trial court erred in refusing to grant their peremptory exception wherein this objection was raised.
Defendants reason that the original tort-feasors were responsible for the subsequent medical malpractice. As such, the original tortfeasors were liable in solido with the medical malpractice defendants for the survivorship benefits and wrongful death of Murphy Steptoe. Accordingly, a satisfaction of the debt by the original tort-feasors released all those defendants who were solidarily liable. According to these defendants, under this rationale, the only remaining liability would be as between the solidary obligors, (i.e., the various defendants) for contribution. They thus argue that the plaintiffs no longer have a right of action, that action being extinguished by satisfaction.
Louisiana Civil Code Article 1794 defines solidary obligations as follows:
C.C. Art. 1794. Solidary obligation for obligors
An obligation is solidary for the obli-gors when each obligor is liable for the whole performance....
The hallmark of solidarity is the fact that the debtors are obligated for the same thing. Hoefly v. Government Employees Insurance Co., 418 So.2d 575 (La., 1982); Cole v. Mississippi River Bridge Authority, 462 So.2d 1314 (La.App., 5th Cir., 1985). The obligation may be solidary though it derives from a different source for each obligation. La.C.C. Art. 1797. Hoefly v. Government Employees Insurance Co., supra. It is the co-extensiveness of the debt, and not the source of liability, which determines the solidarity of the obligation. Weber v. Charity Hospital of Louisiana, 475 So.2d 1047 (La., 1985); Narcise v. Illinois Central Gulf Railroad, 427 So.2d 1192 (La.1983). This concept was best expressed by the Louisiana Supreme Court in Narcise, id. at 1195, wherein it stated:
The fact of different defenses, different prescriptive periods, different beneficiaries in some cases, and different elements of damages does not detract from the in solido nature of the obligation of the two debtors. These factors may be significant in determining the existence and extent of the liability of each debtor toward the plaintiff. However, once the extent of each debtor’s liability has been determined, there is an in solido obligation as to their common liability to the injured party. (Citation deleted)
*1012 Solidarity may be perfect or imperfect. This distinction is discussed in Gran-ger v. General Motors Corp., 171 So.2d 720 at 722 (La.App., 3rd Cir., 1965) citing Gay v. Blanchard, 32 La.Ann. 497 at 502:
Solidarity may be perfect or imperfect. It is perfect and the obligors are the mandataries of each other, when by the same act, at the same time, they bind themselves to the performance of the same thing. It is imperfect (and they are not mandataries of each other) when they bind themselves to the same thing by different acts or at different times.
Due to the nature of a solidary obligation, whether perfect or imperfect, a performance by one of the solidary obligors will relieve the others of liability towards the obligee. La.C.C. Art. 1794. See: Cole v. Mississippi River Bridge Authority, supra. Conversely, an obligee, at his choice, may demand the whole performance from any of his solidary obligors, provided the obligation has not been extinguished. La.C.C. Art. 1795. Bonacorso v. Turnley, 98 So.2d 295 (La.App., 1st Cir., 1957); Bollinger v. Allstate Insurance Co., 433 So.2d 411 (La.App., 4th Cir., 1983).
It is generally recognized that plaintiffs can have only one death action for the wrongful death of a person although the death results from various acts of several tortfeasors. See: Berger v. Fireman’s Fund Insurance Company, 305 So.2d 724 (La.App., 4th Cir., 1974); Norton v. Crescent City Ice Mfg. Co., 150 So. 855, 178 La. 135 (1933).
In order to determine whether the original tortfeasors (i.e., the defendant driver and his employer) were solidarily liable with these subsequent tortfeasors (i.e., medical providers) we are guided by the jurisprudence.
This subject was discussed by the Louisiana Supreme Court in Weber v. Charity Hospital of Louisiana, supra 475 So.2d at 1050-51:
As to the host driver’s liability for the damages which resulted from the blood transfusion, a tortfeasor may be liable not only for the injuries he directly causes to the tort victim, but also for the tort victim’s additional suffering caused by inappropriate treatment by the doctor, nurse or hospital staff member who treats the injuries directly caused by the tortfeasor.
... The original tortfeasor’s responsibility may extend to the risk involved in the human fallibility of physicians, surgeons, nurses and hospital staffs which is inherent in the necessity of seeking medical treatment.
Here, Gaynell Weber sustained a collapsed lung (among other injuries) in the automobile accident. When she underwent surgery to reinflate her lungs, she received several blood transfusions. She contracted hepatitis from contaminated blood used in the transfusions....
Even though the liability sought to be imposed on Charity and IBB was only for those damages which resulted from the blood transfusion and did not extend to the injuries suffered in the automobile accident, the host driver would still be solidarily liable with Charity and IBB to the extent of the damages sought in the present action. (Citations deleted).
See also: Stevenson v. Bolton Co., Inc., 484 So.2d 678 (La.App. 1st Cir., 1985), writ denied, 489 So.2d 247 (1986).
Under the Weber rationale these various defendants would appear to be solidarily liable to plaintiffs. The pivotal issue, in this case, however, is whether the actions of the subsequent tortfeasors (i.e., medical providers) were an intervening act of negligence which would have superseded the negligent acts of the original tortfeasors (i.e. defendant driver and his employer).
The factors to be taken into consideration in making such a determination are those expressed in Titard v. Lumbermen’s Mutual Casualty Co., 282 So.2d 474 at 477-478 (La., 1973):
‘This does not mean that every consequence of a negligent act of man requires him to respond in damages.... The keys for the solution of the issue of responsibility when there is more than one cause-in-fact of damages are (1) a determination of the exact risk or risks *1013 anticipated by imposition of the legal duty which has been breached and (2) the legal or policy considerations which grant excuses from certain consequences which follow an act of negligence. This requires, under the facts and the law of each case and the attendant exigencies, a jurisprudential determination which will implement and make effective our broad codal provisions concerning those who should respond in damages for their faults.’
See also Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962).
The foregoing holding is consistent with the generally accepted views as to legal cause. As the Restatement (Second) of Torts (1965) Sec. 442A provides:
‘Where the negligent conduct of the actor creates or increases the foreseeable risk of harm through the intervention of another force, and is a substantial factor in causing the harm, such intervention is not a superseding cause.’
In the present case Quinn’s negligence was a cause in fact of Mr. Steptoe’s severe bodily injuries. The medical attention rendered by the present defendants would have been unnecessary, but for the injuries inflicted by the original defendants (i.e., the driver, Quinn, with vicarious responsibility by his employer). The defendant driver had a duty to refrain from causing injury to another by the negligent operation of his vehicle. This duty encompassed the risk that Mr. Steptoe’s injuries might be worsened by the treatment for those injuries. There is an ease of association between the injury and the rule of law which gives rise to the duty. We conclude, therefore, that the host driver (as well as his employer) and the health care providers who aided Mr. Steptoe in his last illness were solidarily liable for his suffering and death, as well as the suffering of his family occasioned thereby. The actions of the health care providers, under the duty-risk analysis and in consideration of the circumstances of this case were not a superseding cause of Mr. Steptoe’s death. The original and subsequent tortfeasors are all liable for “one and the same thing”, namely, the damages suffered by Murphy Steptoe and his survivors as a result of the negligent operation of the defendant driver’s vehicle which resulted in Mr. Steptoe’s death.
Since the defendants in the two lawsuits are obligors liable to the plaintiffs-obligees, the satisfaction of the indebtedness by the defendant driver, his employer and their insurer extinguished any indebtedness the medical providers may have had. La.C.C. Arts. 1794-1795. Fertitta v. Allstate Insurance Co., 462 So.2d 159 at 163 (La.1985). See also: Narcise v. Illinois Central Gulf Railroad, supra, 427 So.2d at 1194; Hoefly v. Government Employees Insurance Co., supra, 418 So.2d at 579. Hence, plaintiffs have no right of action as against these subsequent defendants (i.e., health care providers).
Plaintiff relies on Doyle v. State Farm Mutual Insurance Co., 414 So.2d 763 (La.1982) for the proposition that its subsequent action against the health providers, after satisfaction of judgment with the first tortfeasor, is legally permissible.
In the Doyle case, id., the injured motorist sued the defendant driver, her insurer and the manufacturer of plaintiff’s vehicle in federal court. The plaintiff sued his uninsured motorist carrier in state court seeking underinsured motorist coverage. This suit was stayed pending the outcome of the federal lawsuit. The plaintiff settled with the defendant driver and her insurer. The settlement was credited to any indebtedness owed by the defendant manufacturer. The settlement reserved all rights against plaintiff’s uninsured motorist carrier. Following a trial, in federal court against the manufacturer, plaintiff was awarded a judgment which was satisfied.
Thereafter, the plaintiff’s uninsured motorist carrier filed a motion for summary judgment in state court wherein this defendant alleged that plaintiffs demands had been fully satisfied in federal court. The trial court granted the motion and the appellate court affirmed. The Louisiana Supreme Court granted certiorari and reversed the judgments below. The Court reasoned that the doctrine of res judicata *1014 did not apply because there was neither identities of “parties” nor identity of “cause” citing former La.C.C. Art. 2286.[3] The Court also found that there was no splitting of the cause of action, under La. C.C.P. Art. 425, because one action sounded in tort and the other in contract. Thus the Supreme Court concluded “that plaintiff is not precluded from re-litigating the extent of his damages in this suit” (i.e., state court action). Doyle, id. 414 So.2d at 766.
We find the Doyle Case, id., 414 So.2d at 766, inapposite to the case at bar. In this case, defendants have not raised the exception of res judicata. Furthermore, in this case both actions (i.e., the original action against the defendant driver and his employer, as well as the subsequent action against the health care providers) sound in tort and, as such, would constitute a splitting of actions under La.C.C.P. Art. 425.
For these reasons the judgment of the district court denying defendants’ peremptory exception of no right of action is reversed, and the case is dismissed[4] at plaintiffs’ costs.
REVERSED AND RENDERED.

. The suit against the Town of Amite could not be tried by a jury.

. The posture of this case would have allowed the trial judge to consider the evidence in reaching a determination concerning the defendants’ exception of no cause of action, however, we chose to dispose of this matter on a consideration of the defendants’ exception of no right of action. See C.C.P. Art 931.

. Former La.C.C. Art. 2286 has been redesignat-ed as La.R.S. 13:4231. Although this case is distinguishable from the majority view in Doyle, the causes of action were not split because the suit against the uninsured motorist carrier was contractual; a strict application of res judicata would still not allow dismissal here because the parties are different. Yet logic and common sense dictate that a person can be wrongfully killed only once even though several parties may be involved in the death. Once the wrongful death claim is litigated, responsibility is established and damage fixed, it would be ludicrous to allow the same death to be attributed to another party. Under the present state of the jurisprudence we choose to dispose of this matter through an exception of no right of action. Perhaps the Supreme Court should follow the advice of Justice Lemmon in Doyle and revisit the rule of res judicata adopted in Welch v. Crown Zellerbach Corp., 359 So.2d 154 (La.1978) and Mitchell v. Bertolla, 340 So.2d 287 (La.1976).

. We dismiss, rather than remand this case since the court is satisfied that there is no amendment of the pleading in this case which would give plaintiffs a right of action. La.C.C.P. Art. 923.