634 So.2d 331 (1994)
Mary Louise Carr STEPTOE, et al.
v.
LALLIE KEMP HOSPITAL, et al.
No. 93-C-1359.
Supreme Court of Louisiana.
March 21, 1994.
Rehearing Denied June 24, 1994.
Dissenting Opinion March 22, 1994.
Opinion Concurring in Part, Dissenting in Part March 25, 1994.
Dissenting Opinion March 31, 1994.
*334 Paul H. Due, Donald W. Price, Due, Smith, Caballero, Price & Guidry, David W. Robertson, Baton Rouge, Joseph H. Simpson, Simpson & Schwartz, Amite, for applicant.
Fred J. Cassibry, Michael A. Stroud, David Shaw, Brook, Morial, Cassibry, Pizza & Adcock, New Orleans, for respondent.
Dissenting Opinion by Justice Marcus March 22, 1994.
Opinion by Justice Dennis Concurring in Part, Dissenting in Part March 25, 1994.
Dissenting Opinion by Justice Kimball March 31, 1994.
WATSON, Justice.[1]
When death results from medical malpractice after an accidental injury, does satisfaction of a judgment against the accident tortfeasors bar litigation and recovery against the medical malpractice tortfeasors?

FACTS
Murphy J. Steptoe died from medical malpractice following September 6, 1985, automobile accident injuries. A wrongful death and survival suit was brought by his widow and twelve children against the automobile accident tortfeasors: the Town of Amite; its police officer employee, Julius Quinn; and its insurer, Great Global Assurance Company. After trial in June of 1986, Murphy Steptoe was found to be thirty-five percent at fault in causing the accident.
In August of 1986, the medical malpractice defendants: Lallie Kemp Regional Medical Center; New Orleans Charity Hospital; and the Louisiana Department of Health and Human Resources (DHHR), were added to the initial suit. Suit was brought against the medical malpractice defendants before the September 11, 1986, final judgment against the accident defendants. A $356,736.25 judgment (reduced by thirty-five percent from $548,825) against the City of Amite, Julius Quinn and Great Global Assurance Company was fully paid: satisfactions of judgment were filed in August of 1988.
The medical malpractice defendants filed peremptory exceptions of no right and no cause of action, claiming that satisfaction of the judgment against the original tortfeasors released their solidary liability. The trial court denied the exceptions, noting that solidarity had not been tried. After trial against the medical malpractice defendants, the trial court found that Murphy Steptoe had an accidental, untreated C-7 neck fracture but died of cardiac arrhythmia caused by medical malpractice. The trial court awarded a $643,297 judgment against the medical malpractice defendants on December 9, 1991.
The court of appeal reversed, sustaining defendants' exception of no right of action and dismissing the suit. Steptoe v. Lallie Kemp Regional Hosp., 618 So.2d 1008 (La. App. 1st Cir.1993). A writ was granted to review the judgment. 623 So.2d 1288 (La. 1993).

MEDICAL MALPRACTICE LIABILITY
The trial court concluded that Murphy Steptoe died from a preventable cardiac arrhythmia caused by negligent medical treatment. His chance of surviving his accidental injuries was lost because of medical malpractice. Hastings v. Baton Rouge Gen. Hosp., 498 So.2d.713 (La.1986); Martin v. East Jefferson General Hosp., 582 So.2d 1272 (La.1991).
A tortfeasor is liable for related medical treatment injuries suffered by a tort victim. Weber v. Charity Hosp. of Louisiana, 475 So.2d 1047 (La.1985); Lambert v. United States Fidelity & Guaranty Co., 629 So.2d 328 (La.1993). See Joiner v. Diamond M Drilling Co., 688 F.2d 256 (5th Cir.1982). There is an ease of association between the original injury and the negligent treatment which creates solidary liability between the tortfeasor and those guilty of medical malpractice. LSA-C.C. art. 2324 (prior to its 1987 amendment); Younger v. Marshall Industries, 618 So.2d 866 (La.1993); Lasha v. Olin Corp., 625 So.2d 1002 (La.1993). The tortious medical treatment aggravated the *335 accidental injury, and the malpractice defendants are liable for the full extent of the aggravation.

CAUSE OF ACTION ANALYSIS
A cause of action is based on an act which gives the right to invoke judicial interference. Trahan v. Liberty Mutual Insurance Company, 314 So.2d 350 (La.1975). Plaintiffs' initial cause of action was based on negligent operation of a vehicle. A second cause of action manifested itself during discovery and trial, which was based on medical malpractice in treating the automobile accident injuries. There were separate and distinct acts of negligence. The automobile accident tortfeasors caused injury, and the medical malpractice defendants caused death. Although Steptoe's death was one occurrence, it was produced by more than one cause.
LSA-R.S. 13:4231(1) now provides:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
The statute was amended in 1990 to make a substantive change in the law: a judgment bar to all causes of actions arising out of the same occurrence. Also see the amendment to LSA-C.C.P. art. 425. The amendments only apply to civil actions filed after January 1, 1991, and do not affect this suit.
LSA-C.C. art. 1795 provides, in pertinent part: "Unless the obligation is extinguished, an obligee may institute action against any of his solidary obligors even after institution of action against another solidary obligor." Plaintiffs were entitled to assert their separate actions against the separate groups of defendants unless barred by prescription or res judicata.

PRESCRIPTION
The cause of action against the medical malpractice defendants is not subject to a plea of prescription. Prescription was interrupted against the medical malpractice defendants when those defendants were found to have solidary liability. LSA-C.C. art. 2324 (prior to its 1987 amendment); LSA-C.C. art. 1797; LSA-C.C. art. 1799; Picone v. Lyons, 601 So.2d 1375 (La.1992).

RES JUDICATA
The action is not subject to a plea of res judicata. Identity of the parties is required for res judicata. Safeco Ins. Co. of America v. Palermo, 436 So.2d 536 (La. 1983). The second proceeding lacked identity of subject matter, as well as identity of parties. Dornak v. Lafayette General Hospital, 399 So.2d 168 (La.1981). Although collateral estoppel or issue preclusion is not a valid Louisiana defense, fault of the malpractice defendants was not raised or determined in the first proceeding.

SATISFACTION OF JUDGMENT
A valid final judgment is conclusive between the same parties. LSA-R.S. 13:4231. The final judgment here determined the merits of the claim against the accident tortfeasors. LSA-C.C.P. art. 1841. Issues not raised by the pleadings and not involved in the decision are not concluded by a judgment. Mitchell v. Bertolla, 340 So.2d 287 (La.1976). The medical malpractice defendants' fault in causing Murphy Steptoe's death was not considered at the first trial and was not precluded by the original judgment. Safeco Ins. Co. of America v. Palermo, 436 So.2d 536 (La.1983).
Plaintiffs did not intend to abandon their pending claims against the medical malpractice defendants when the satisfactions of judgment were executed in favor of the accident tortfeasors. Weber v. Charity Hosp. of Louisiana, 475 So.2d 1047 (La.1985).
Defendants contend that the performance rendered by the accident defendants releases them from liability toward plaintiffs, relying on Civil Code Article 1794:

*336 An obligation is solidary for the obligors when each obligor is liable for the whole performance. A performance rendered by one of the solidary obligors relieves the others of liability toward the obligee.
The original judgment was against only the accident defendants. When that judgment was satisfied, any liability of the medical malpractice defendants had not been determined or quantified. They argue that a solidary obligation existed as a matter of law, citing Narcise v. Illinois Cent. R. Co., 427 So.2d 1192 (La.1983). Narcise held that two defendants liable on different grounds could be liable in solido but pointed out the necessity of weighing and apportioning fault. When the first judgment was paid, the medical malpractice defendants only had potential liability. Younger v. Marshall Industries, 618 So.2d 866 (La.1993). The alleged fault of the medical malpractice defendants had not been determined or quantified, and they were not solidary obligors at the time of payment. Taylor v. United States Fidelity & Guaranty Ins. Co., 630 So.2d 237 (La.1993).
The satisfactions of judgment given the accident tortfeasors did not bar plaintiffs from litigating their damages against the medical malpractice defendants. LSA-C.C. art. 1802; Doyle v. State Farm (Mut.) Ins. Co., 414 So.2d 763 (La.1982); Ugulano v. Allstate Ins. Co., 367 So.2d 6 (La.1978). See Milicevich v. Sacramento Medical Center, 155 Cal.App.3d 997, 202 Cal.Rptr. 484 (1984).

DOUBLE RECOVERY
Defendants contend that plaintiffs have been paid the total damages due for Murphy Steptoe's wrongful death. However, plaintiffs were not paid their full damages because 35 percent was deducted for Steptoe's comparative fault in causing the automobile accident. Murphy Steptoe's fault in causing the automobile accident did not alter the standard of care owed by those treating his injuries. The medical malpractice defendants have full responsibility for their independent negligence.

COMPARATIVE FAULT
The trial court concluded that the health care providers' fault was an intervening and superseding cause of Steptoe's wrongful death. This conclusion may be factually correct: Murphy Steptoe might have survived his injuries if he had received appropriate medical treatment. However, the trial court's decision that the accident tortfeasors' initial fault was exonerated by the negligent medical treatment is legally erroneous. Weber v. Charity Hosp. of Louisiana, 475 So.2d 1047 (La.1985). Legal causation is decided under a duty-risk analysis. The duty to refrain from negligent automobile operation includes the risk that an accident victim's medical treatment may cause further damage. Lambert v. United States Fidelity & Guaranty Co., 629 So.2d 328 (La. 1993). The concept of intervening and superseding cause does not exonerate an initial tortfeasor when the victim's medical treatment prevents the victim's survival. The medical malpractice defendants are also liable for the malpractice consequences. Thus, the two groups now have solidary liability for the death.
The solidary liability of the accident tortfeasors and the medical malpractice defendants does not determine their rights in relation to each other. Williams v. Sewerage & Water Bd. of N.O., 611 So.2d 1383 (La. 1993); Egros v. Pempton, 606 So.2d 780 (La. 1992); Hoefly v. Government Employees Ins. Co., 418 So.2d 575 (La.1982).
In the first action against the automobile defendants, that trier of fact determined, on the evidence adduced, the degree of fault of the automobile defendants (65 percent) and the amount of damages caused by these defendants ($548,825). Because the automobile defendants did not file a third party demand against the medical defendants or request apportionment of fault, the judgment in the first action did not decide the medical defendants' degree of fault or the damages attributable to those defendants.
In the second action against the medical defendants, another trier of fact determined, on other evidence, the degree of fault of the medical defendants (100 percent) and the amount of damages caused by these defendants ($643,297). While this procedure was unusual, the second action was not barred by *337 res judicata or collateral estoppel as those doctrines were applied in Louisiana at that time. The second action was necessary to determine the liquidated amount of that obligation, at least as between the medical defendants and plaintiff, and the degree of fault on the part of these defendants in causing that amount of damages. The second trier of fact was at liberty to determine the degree of fault of the medical defendants and the amount of damages caused by them, without regard to any of the findings of the trier of fact in the first action. In this respect the payment by the automobile defendants was no different than if they had paid that amount in compromise of their obligation, leaving the amount of the obligation and the degree of fault of the medical defendants to be determined by a subsequent trier of fact.
The medical defendants were deprived of their contribution rights by plaintiffs' acceptance of partial performance from the automobile defendants. The medical defendants could have protected themselves in the present action by pleading and proving that causative fault for the damages was attributable to the automobile defendants. Upon such proof, the medical defendants would have been entitled to a proportionate reduction of the damages. LSA-C.C. art. 1804; Harvey v. Travelers Ins. Co., 163 So.2d 915 (La.App. 3d Cir.1964); Dill v. Department of Transp. and Dev., 545 So.2d 994 (La.1989); Taylor v. United States Fidelity & Guaranty Ins. Co., 630 So.2d 237 (La. 1993). Since the medical defendants failed to prove any fault on the part of the automobile defendants in causing plaintiffs' damages (or any fault on the part of the tort victim), they are not entitled to any reduction in the 100 percent damages determined by the trier of fact to be attributable to their fault.

CONCLUSION
The court of appeal erred in sustaining the exception of no right of action and dismissing plaintiffs' suit. The judgment of the court of appeal is reversed. The judgment of the trial court, awarding plaintiffs judgment against the medical malpractice defendants, is reinstated.
COURT OF APPEAL JUDGMENT REVERSED; TRIAL COURT JUDGMENT REINSTATED.
WATSON, J., concurs and assigns reasons.
DENNIS, J., concurs in part and dissents in part for reasons assigned.
MARCUS, J., dissents and assigns reasons.
KIMBALL, J., dissents and assigns reasons.
WATSON, Justice, concurring.
I join in the majority opinion and add the following concurring reasons: In this peculiar factual scenario, a basis for apportionment of fault was not proven. The Court was faced with three choices: (1) no apportionment of fault, the result in the majority opinion, which possibly allows some double recovery; (2) giving the medical malpractice defendants a dollar-for-dollar credit[1] for the payment by the automobile tortfeasors, a solution repudiated by the Louisiana jurisprudence [See Dill v. State Dept. of Transp. & Dev., 545 So.2d 994 (La.1989), and Taylor v. U.S. Fidelity & Guar. Ins. Co., 630 So.2d 237 (La.1993)]; and (3) giving the medical malpractice defendants credit for the automobile tortfeasors' percentage of fault by adopting a ratio of 65 (the fault percentage assessed to the automobile tortfeasors in the first trial) to 200 (the total possible fault of the automobile tortfeasors and the medical malpractice defendants in two trials). The latter approach, which would reduce the judgment by 32.5 percent, is perhaps the most equitable.
MARCUS, Justice, dissenting.
Had plaintiffs settled with the automobile defendants, I agree that the medical defendants would have had to prove the percentage of fault of the automobile defendants to get a reduction in damages. However, in *338 plaintiffs' suit against the automobile defendants, the latter were proven to be 65% at fault and therefore responsible for 65% of plaintiffs' damages. Therefore, in the second suit against the medical defendants, plaintiffs are entitled to recover no more than 35% of the damages having received 65% of their damages in the first suit against the automobile defendants. Since the medical defendants did not prove any fault on the part of the automobile defendants, plaintiffs should be able to recover 35% of the damages proven in the second trial against the medical defendants. The effect of the majority opinion permits double recovery. Accordingly, I respectfully dissent.
KIMBALL, Justice, dissenting.
I respectfully dissent from the majority's opinion which holds the malpractice defendants not entitled to any credit against the trial court judgment for the accident defendants' payment of the first trial court judgment.
I join in the dissenting reasons assigned by Justice Dennis that the medical malpractice defendants are entitled to a dollar-for-dollar credit to the extent that the accident defendants made a performance of the solidary obligation existing between the accident defendants and the malpractice defendants.
In Taylor v. U.S. Fidelity and Guaranty Ins., 630 So.2d 237 (La.1993), this court noted that "Louisiana courts have long recognized that when a plaintiff settles with and releases one of several joint tortfeasors, he thereby deprives the remaining obligors of the right to contribution against the released obligor." Accordingly, we reiterated that a plaintiff's "settlement with one solidary obligor reduces his recovery against the remaining obligors by the percentage of the proportionate fault of the released obligor." The reduction would only apply, however, "when the remaining defendants prove at trial that the released party was a joint tortfeasor, and therefore solidarily liable."
We have always required the remaining defendant[s] to prove at trial that the settling party was a joint tortfeasor, and thus solidarily liable, because the fact of a settlement alone is not proof the released party was a joint tortfeasor and therefore a solidary obligor. "[T]he negligence of parties released from the suit remains an issue in the trial because the remaining tortfeasor is only entitled to a reduction of the award if the parties released are proven to be joint tortfeasors." Raley v. Carter, 412 So.2d 1045, 1046 (La. 1982).
In the instant case, there was no settlement with the accident defendants. Rather, plaintiffs obtained a judgment against them. Furthermore, in that judgment, the defendants were held liable for those damages not only resulting from the accident but also from the malpractice. Thus, there exists a court judgment which has found the accident defendants to be liable for the accident injuries and the malpractice injuries. It is not necessary, then, for the remaining malpractice defendants to prove at trial that the accident defendants were tortfeasors because the issue of whether or not the accident defendants were negligent has been previously judicially determined.
I do not believe, however, that the malpractice defendants are entitled to a dollar-for-dollar credit for the entire performance rendered by the accident defendants, i.e. for $356,736.25, which represents 65% of the total damages awarded in the first suit and the amount of fault for all of the damages which the trial court found the accident defendants to be liable for in the first suit. Allowing the malpractice defendants a credit for the entirety of the payment made by the accident defendants conflicts with the precepts found in Weber v. Charity Hospital of Louisiana, 475 So.2d 1047 (La.1985).
Under Weber, the accident defendants herein are "liable not only for the injuries [they] directly cause[d] to the tort victim, but also for the tort victim's additional suffering caused by inappropriate treatment by the doctor, nurse or hospital staff member who treat[ed] the injuries directly caused" by the accident defendants. Weber, Id. at 1050. Additionally under Weber, the original tortfeasors (the accident defendants) are solidarily liable with the medical malpractice defendants only for the damages resulting from *339 the negligent medical treatment.[1] The medical malpractice defendants are not, however, solidarily liable with the original tortfeasor, or indeed, liable in any way, for the injuries suffered in the initial automobile accident.
Thus, the medical malpractice defendants in this case should only receive credit for that part of the accident defendants' payment which is attributable to their performance of the solidary obligation, i.e. that part of the payment which compensates plaintiff for the damages resulting from the malpractice only.[2] Allowing the medical malpractice defendants a credit for the entire 65% of the damages paid by the accident defendants impermissibly gives the malpractice defendants credit not only for the accident defendants' performance of the solidary obligation but also for their performance of their own individual obligation.
DENNIS, Justice, concurring in part and dissenting in part.
I respectfully concur in part and dissent in part. I agree with the majority that the court of appeal erred in completely denying the plaintiffs any recovery from the malpractice obligor defendants in the present case. However, I do not agree that the plaintiffs are entitled to enforce the whole solidary obligation against the malpractice obligor defendants without deducting therefrom the partial performance that they accepted from the accident obligor defendants in the prior case.
The applicable legal principles are set forth by La.Civ.Code art. 1802, which provides that:
Renunciation of solidarity by the obligee in favor of one or more of his obligors must be express. An obligee who receives a partial performance from an obligor separately preserves the solidary obligation against all his obligors after deduction of that partial performance.
Under Article 1802, solidarity is preserved when an obligee accepts a partial performance from one obligor, and the obligee retains his right of action against all the solidary obligors for the balance, regardless of whether the amount he received from the first obligor equaled the latter's portion, or was less or more than that portion. Id., Revision Comments1984. See also Bonacorso v. Turnley, 98 So.2d 295 (La.App. 1st Cir.1957) (Tate, J.). Under these legal precepts, the plaintiffs, the solidary obligees, retained their rights of action against all of the solidary obligors, including the malpractice obligors, but only subject to a deduction for the partial performance that they accepted from the accident obligors in the prior case.
The partial performance by the accident obligors has been characterized and classified incorrectly by both the rationale of the majority opinion and the arguments of the malpractice obligor defendants. First, the majority incorrectly applies Civil Code article 1803 which deals with remission and transaction or compromise. The payment by the accident obligors was, instead, a partial performance of the obligation because the plaintiff-obligees merely accepted the payment. They did nothing to indicate their consent to enter into a new obligee-obligor relationship with the accident obligors or any of the other solidary obligors. Therefore, the plaintiffs' acceptance of the partial performance did not amount to a remission, or a transaction or compromise of the obligation because each of these requires a new contractual relationship between the obligee and obligor. See C.C. *340 arts. 1803, 1888 (remission of debt); C.C. arts. 1803, 3071 (transaction or compromise). See generally Litvinoff, The Law of Obligations, §§ 7.74-7.76, in 5 Louisiana Civil Law Treatise (1992); 1 Litvinoff, Obligations, §§ 358-399, in 6 Louisiana Civil Law Treatise (1969). See also Levasseur, Louisiana Law of Obligations in General, 205-206, 244-52 (1988); 2 M. Planiol, Traité Élémentaire de Droit Civil, no. 605 (11th ed. Louisiana State Law Institute transl. 1939). Professor Litvinoff observes that, "an obligee who receives a partial performance from an obligor separately preserves the solidary obligation against all of his obligors after deduction of that partial performance. In other words, if all the obligee does is to receive a partial payment, he preserves his right to demand the whole balance from any of his obligors, including the one who made such payment, without need of any reservation to that effect." Litvinoff, The Law of Obligations, § 7.74, at 175, in 5 Louisiana Civil Law Treatise (1992). Professor Levasseur points out:
One must be very careful not to equate or analogize a partial performance accepted by an obligee with a partial remission of debt (LSA-C.C. Arts. 1888 et seq.; see remission, infra, p. 244 et seq.). The fact that an obligee consents to receiving a partial performance should be considered, first and foremost, as evidence of his willingness to consent to a division of the object of the obligor's performance when the obligee would have been entitled to require that the performance be indivisible. It remains, therefore, that an obligee who receives a partial performance may demand performance of the balance of the object of the obligation.
A creditor-obligee who receives a partial performance from his obligor may, however, be inclined to terminate the legal relationship in existence by granting his obligor a partial remission of debt. Such a juridical act amounts to a new contractual relationship grafted upon a previously existing legal relationship. The purpose of that new contractual relationship is to terminate the previous one on grounds, or for a cause, other than those which had justified the creation of that original legal relationship. A contract which was originally negotiated as a sale may be turned into a partial donation of the price if the vendor-obligee remits to his buyer part payment of the price.
One reliable test to use in ascertaining the intent of the parties to such juridical acts is to remember that a remission of debt, although it can be tacit, must be accepted by the obligor who should indicate clearly that he is willing to enter into a new contractual relationship meant to extinguish a prior one. Hence, in a case of partial performance of an obligation, one should not "presume" the existence of a remission of debt or accord and satisfaction when neither the "cause" nor the "consent" of the parties can be related to this particular contract of remission of debt.
Levasseur, Louisiana Law of Obligations in General, 205-206 (1988). See also, 1 Pothier on Obligations, [524] at 421 (1853) ("Regularly payment of a part of what is due extinguishes the debt as to that part; therefore, if you owe me ten pounds, and pay me five, the debt is extinguished for a moiety.").
Because the payment by the accident obligors was neither a remission, nor a transaction or compromise, the majority's application of Article 1803 is incorrect. Likewise, cases relied on by the majority and by the plaintiffs, such as Taylor v. United States Fidelity & Guar. Ins. Co., 630 So.2d 237 (La.1993), which involved a clear intention by the obligee to enter into a contract of transaction or compromise, are not applicable to the present case.
Second, it is also incorrect, to classify the partial performance as a complete payment or performance of the whole solidary obligation, as the malpractice obligors contend. Under our original civil law res judicata principles, the plaintiffs were entitled to relitigate the amount of the solidary obligation in the present suit against the malpractice obligors, as the majority opinion correctly explains. Accordingly, when that re-litigation took place in the present case, the amount of the solidary obligation was established to be $643,297, making it evident that the payment of $356,736.25 by the accident obligors was *341 only a partial payment or performance of that obligation.
Applying these principles to the present case, I conclude that when the plaintiffs accepted the partial performance or payment of $356,736.25 from the accident obligor defendants, the plaintiffs retained their right of action against the other solidary obligors, the malpractice obligor defendants, for the balance. Because of the res judicata precepts adequately explained by the majority opinion, the plaintiffs are not bound by the original judgment in their proof of the obligation against the solidary obligors. However, the plaintiffs are required by Article 1802, as well as reason, equity and justice, to deduct the partial payment they have accepted from the accident obligors when they enforce against the malpractice obligors the solidary obligation preserved under that Article. Accordingly, the plaintiffs are entitled by law to a judgment of only $286,560.75 against the malpractice obligors because the partial performance of the accident obligors of $356,736.25 must be deducted from the total amount of the solidary obligation, $643,297, fixed by the judgment in the present case.
NOTES
[1] Pursuant to Rule IV, Part 2, § 3, Hall, J. was not on panel which heard and decided this case. See the footnote in State v. Barras, 615 So.2d 285 (La.1993).
[1] The United States Supreme Court is considering the issue of dollar-for-dollar credit against percentage credit in McDermott, Inc. v. Clyde Iron, 979 F.2d 1068 (5th Cir.1992), writ granted, ___ U.S. ___, 113 S.Ct. 3033, 125 L.Ed.2d 721.
[1] It is irrelevant that the original tortfeasor is individually liable for the injuries resulting from the accident and solidarily liable with the medical malpractice defendants for the injuries resulting from the negligent medical treatment. Citing Narcise v. Illinois Central Gulf Railroad, 427 So.2d 1192 (La.1983), the Weber court noted: "two defendants may be solidarily liable for those damages for which plaintiff can compel either to pay, even though other elements of damages may be recoverable only against one of the defendants. It is the coextensiveness of the obligations for the same debt, and not the source of liability, which determines the solidarity of the obligation." Weber, 475 So.2d at 1051.
[2] For example, only the accident defendants are liable for the pain and suffering which the decedent incurred immediately after the accident and prior to his death. This is an individual obligation, and the malpractice defendants should not be given a credit for any payment the accident defendants made toward this element of damages.