656 So.2d 636 (1995)
Janice L. TURNER and James Turner
v.
Dr. Hamid MASSIAH, Louisiana Medical Mutual Insurance Company, et al.
No. 94-C-2548.
Supreme Court of Louisiana.
June 16, 1995.
Concurring Opinion August 30, 1995.
Rehearing Denied September 14, 1995.
*637 Stephen M. Pizzo, John Elliott Baker, Blue Williams, Metairie, for applicant.
Donna G. Klein, Monica Ann Frois, McGlinchey, Stafford, Lang, New Orleans, for respondent.
Larry Michael Roedel, Gregory D. Frost, David Alva Woolridge, Jr., Baton Rouge, for amicus curiae, La. Hosp. Ass'n, and La. Dental Ass'n.
Marc W. Judice, Lafayette, for amicus curiae, Medical Protective Co.
Lawrence Wayne Pettiette, Jr., Shreveport, for amicus curiae, HCA Highland Hosp., Inc.
Stewart Earl Niles, Jr., Patricia Anne Bethancourt, New Orleans, counsel for amicus curiae, La. Medical Mut. Ins. Co.
Christoffer Carter Friend, Rene A. Curry, Jr., New Orleans, for amicus curiae, La. Psychiatric Co., and DePaul Hosp.
Franklin David Beahm, Robert David Ford, New Orleans, for amicus curiae, Galen-Med, Inc., and Lakeland Medical Center.
David E. Verlander, III, Monroe, for amicus curiae, HDC Health Service of La. d/b/a North Monroe Hosp.
Randall M. Seeser, Eugene J. Sues, Alexandria, for amicus curiae, Cent. La. Healthcare System.
Benjamin Wakefield Mount, Gregory Paul Allen Marceaux, Lake Charles, for amicus curiae, Lake Area Medical Center.
Paul Daniel Gibson, Lafayette, for amicus curiae, La. Patient's Compensation Fund and Ville Platte Medical Center.
Donald S. Zuber, Baton Rouge, for amicus curiae, Cypress Hosp.
Concurring Opinion of Justice Lemmon August 30, 1995.
YELVERTON, Justice Pro Tem.[*]
In this medical malpractice case the trial judge, fashioning a judgment based on a jury verdict, made the damage award subject to two separate $500,000 limitations on recovery. The court of appeal affirmed. This court granted a writ and we now reverse insofar as the judgment allowed two caps, and reduce the award by $408,000. The limitation of recovery of La.R.S. 40:1299.42(B)(1), providing that the total amount recoverable for all malpractice claims for injuries to or death of a patient, exclusive of future medical care and related benefits as provided in La.R.S. 40:1299.43, shall not exceed $500,000 plus interest and costs, limits the plaintiffs' recovery in this case to a single $500,000 cap.
In May 1984 Janice Turner had breast augmentation surgery performed by Dr. Hamid Massiha[1], a plastic surgeon. After the surgery she had problems with a hardening in her right breast. Dr. Massiha saw her several times in 1984 and examined her three more times in 1986. On all visits he attributed the area of hardening to scar tissue from the surgery. He never ordered diagnostic tests.
In August 1985 and again in January 1987, she saw her personal physician, Dr. Simon V. Ward, an obstetrician and gynecologist. He performed breast examinations and found the area of hardening in her right breast. Dr. Ward did not order any diagnostic tests. He did not feel it was his responsibility.
In late 1987 other doctors ordered mammograms and a biopsy. They discovered that she had cancer. A right mastectomy was performed. By that time the cancer was in Stage 2 and Janice Turner's chance of survival was only 25%.
She filed a suit and went to trial against Drs. Massiha and Ward. A jury heard the case and rendered its verdict on interrogatories. *638 The jury found Dr. Massiha was negligent and that his negligence caused the damage. The jury also found Dr. Ward was negligent and that his negligence caused the damage. Janice Turner was found not negligent. The jury was instructed to apportion fault. Answering interrogatories as to "the total negligence which proximately caused damage to Janice Turner," the jury attributed 60% to Dr. Massiha and 40% to Dr. Ward. It itemized Janice Turner's general damages: for loss of right breast, physical disfigurement, and past pain and suffering, $250,000; and for loss of the chance of survival and her future mental distress, $750,000. The jury awarded James Turner, the husband, who had sued for loss of consortium, $20,000.
After the jury returned its verdict but before the judgment on the verdict was signed, Dr. Ward's insurer paid plaintiffs $100,000 and obtained a release in which plaintiffs reserved their rights against Dr. Massiha, his insurer, and the Fund. Dr. Ward and his insurer were then dismissed.
The judgment which the district court then signed was constructed on the notion that two $500,000 medical malpractice caps were appropriate, one for each liable health care provider, and that the percentage of fault for each provider found by the jury was also the percentage of the harm which that provider had caused. By this calculation the judgment limited the general damages due Janice Turner from Dr. Massiha to $500,000. Of this amount the judgment declared that $100,000 plus interest was due from Dr. Massiha and his insurer, and the other $400,000 plus interest was due from the Louisiana Patient's Compensation Fund. The judgment awarded Janice Turner an additional $300,000 from the Patient's Compensation Fund, for Dr. Ward's liability, recognizing that $100,000 had been previously paid by Dr. Ward and his insurer and that they had been dismissed. Finally, the judgment awarded $8,000 to James Turner. This award was on account of the liability of Dr. Ward and was to be paid from the Patient's Compensation Fund.
Explained another way, the jury awarded the two plaintiffs a total of $1,020,000 in general damages. The judgment allowed recovery of $808,000 in addition to their settlement for $100,000. This was $112,000 short of full recovery. These results were from the application of two caps. The first application reduced the amount recoverable based on the jury-found proportionate fault of Dr. Massiha from $612,000 to the $500,000 cap and gave it to Janice Turner. The second application of the cap resulted in the plaintiffs recovering $100,000 by settlement and having a judgment for an additional $308,000, these last two amounts together being the full measure of the malpractice claims calculated by the trial court for the injury to Janice Turner which the jury had attributed to the fault of Dr. Ward.
The judgment as thus framed was signed, and later amended to take care of a problem not pertinent to this case. A few days before the amended judgment was signed, the Fund paid the plaintiffs the $300,000 plus interest it owed under the judgment on account of the liability of Dr. Ward. The Turners executed a partial satisfaction of judgment acknowledging receipt of that payment. In the partial satisfaction of judgment, they reserved their rights under all other portions of the judgment, including specifically the award of $500,000 in favor of Janice Turner against Dr. Massiha and the Fund, and the $8,000 award in favor of James Turner against the Fund. They noted in the partial satisfaction of judgment that these portions of the judgment were the subject of appeals to be taken to the court of appeal.
The anticipated appeals were taken. The Fund intervened and appealed the judgment against it for the unpaid $408,000. Dr. Massiha and his insurer appealed the judgment against him for $100,000. After the court of appeal affirmed the awards,[2] the defendants applied for writs. This court denied the writ application of Dr. Massiha and his insurer, but granted the application of the Fund.
The record thus shows that, counting a final judgment against one health care provider for $100,000, the payment in settlement of $100,000 by another, and the receipt of $300,000 from the Fund in a partial satisfaction of judgment, the plaintiffs have been *639 paid one cap of $500,000. For the Fund to be liable for the balance of the judgment against it, $408,000, would require the application of two caps. The caps as provided by La.R.S. 40:1299.42(B) of the Louisiana Medical Malpractice Act are:
B. (1) The total amount recoverable for all malpractice claims for injuries to or death of a patient, exclusive of future medical care and related benefits as provided in R.S. 40:1299.43, shall not exceed five hundred thousand dollars plus interest and cost.
(2) A health care provider qualified under this Part is not liable for an amount in excess of one hundred thousand dollars plus interest thereon accruing after April 1, 1991, for all malpractice claims because of injuries to or death of any one patient.
(3)(a) Any amount due from a judgment or settlement or from a final award in an arbitration proceeding which is in excess of the total liability of all liable health care providers, as provided in Paragraph (2) of this Subsection, shall be paid from the patient's compensation fund pursuant to the provisions of R.S. 40:1299.44(C).
(b) The total amounts paid in accordance with Paragraphs (2) and (3) of this Subsection shall not exceed the limitation as provided in Paragraph (1) of this Subsection.
The court of appeal found that La.R.S. 40:1299.42(B)(1) is unclear and susceptible of more than one meaning, and that the cap must be strictly construed. The court found that the conduct of Dr. Massiha and Dr. Ward were two separate and unrelated acts of negligence. It found that these two physicians were not in practice together or in any way related, professionally or otherwise, and that they each, on their own, in separate acts, breached the standard of care appropriate to the given situation and were "each liable to plaintiffs for their own negligence." Finding that the patient was injured by the unrelated acts of negligence of two providers, the court of appeal found two acts of negligence, one by each provider, and applied two caps.
We agree with the court of appeal that each provider was liable for the damage for which his negligence was the legal cause. We do not agree, however, that the jury's apportionment of fault, 60% and 40%, can be utilized as an apportionment of damages. The percentage of fault and legal cause are two separate inquiries. La.Code Civ.P. art. 1812(C). The fact that the relative culpability of the providers can be assigned a percentage does not mean that in terms of legal cause each provider was not responsible for the whole injury. The negligence of each provider in this case was the legal cause of the entire damage. Therefore it is incorrect to say that one's negligence was the legal cause of 60% of the damage and the other's the legal cause of 40% of it. We will explain this further.
Legal causation in medical malpractice cases is decided under a duty-risk analysis. Steptoe v. Lallie Kemp Hospital, 93-1359 (La. 3/21/94); 634 So.2d 331. Dr. Massiha's misdiagnosis was a cause-in-fact of the Stage 2 cancer. His duty was to correctly diagnose. The risk of injury for failure to diagnose correctly was Stage 2 cancer. The duty to avoid a misdiagnosis included the risk that another health care provider might also misdiagnose. Dr. Massiha could have prevented the damage by making a proper diagnosis. Therefore, he was liable for all damage resulting. The same analysis is applicable to Dr. Ward. In this case the jury implicitly found that either doctor could have prevented the harm by making a proper diagnosis at some point back up the line. The injury would have been sustained had the negligent act of only one doctor taken place; either doctor's negligence was sufficient, in itself, to bring about the result. The negligence of each was therefore the legal cause of the entire harm. Each liable defendant was liable for all the damages caused. Each tortfeasor's liability for all of the tort victim's injuries was based on more than the imposition of a solidary obligation between joint tortfeasors; his liability for all of the victim's damages resulted because he was the legal cause of all of the victim's harm. Lambert v. U.S. Fidelity & Guaranty Co., 629 So.2d 328 (La.1993).
When a single limitation applies, the Fund will never be liable for more than $400,000. The court of appeal believed that the situation before us was anticipated in a concurring opinion in Stuka v. Fleming, 561 So.2d 1371 (La.1990), cert. denied, 498 U.S. *640 982, 111 S.Ct. 513, 112 L.Ed.2d 525 (1990). Justice Dennis in that opinion suggested that there might be a situation in which the Fund would be liable to pay more than $400,000 for injuries contributed to by more than one health care provider. Justice Dennis recited factors which might be considered in determining whether a single limitation applies to damages caused by plural defendants: "whether the defendants engaged in concerted action, whether the damages are severable, or whether the damages may be apportioned between the tortfeasors." Stuka, 561 So.2d at 1375. The court of appeal saw this case as such a situation.
We disagree. The damage here, Stage 2 breast cancer, cannot be apportioned between the two tortfeasors because the damage is not severable; it is indivisible. If the damage, or injury, could have been divided into two parts, one part caused by one defendant and the other part caused by the other there would have been, in effect, two injuries. In that case, there having been two torts and two injuries, the question of two caps might have been present. In this case there were two torts but only one injury.
Implicit in the jury's responses to interrogatories was that each doctor misdiagnosed the cancer at a time when its discovery would have afforded Janice Turner an 80-90% chance of survival. When it was discovered, it had progressed to the point that she lost her right breast and her chance of survival was down to 25%. The injury was indivisible because it could not be divided up into parts with each part traceable back to a specific delictual origin. No one could say when the cancer started. It may have been as far back as 1984. It was the slow growing kind. The jury's answers to interrogatories necessarily reflect a factual finding that it was present on the occasion when each of the two defendant doctors last examined Janice Turner. The jury may have thought that it was there during every visit to both doctors. The effect of the malpractice acts, viewed singly or collectively, was not determinable until the cancer was discovered. Damages cannot be calculated with reference to any other date than when the cancer was discovered. Even if it were feasible to apportion the harm by some means taking into account the passing of time and the worsening condition, it would still be impossible to divide damages because it could not be determined when the cancer started. Apportioning or separating the injuries caused by one of the doctors from the injuries caused by the other simply cannot be done. "No ingenuity can suggest anything more than a purely arbitrary apportionment of such harm." Prosser and Keaton on Torts, § 52 at 347 (5th ed).
After Janice Turner had been found without fault by the jury and the defendants had each been found the legal cause of her injury, no purpose was served in the determination of the plaintiffs' rights by apportioning fault between the defendants. Nor were the rights of either defendant served by apportioning fault between them; neither made contribution or indemnity an issue in the case.[3] The use of apportionment of fault as a mechanism for making an indivisible injury divisible, thereby creating two injuries caused by two providers and justifying the application of two limitations of recovery, was error.
As applied to the facts of this case, the statutory cap language is not ambiguous. There were two providers, two torts, one patient, and one injury. The statute limits both recovery and liability. The total amount recoverable is $500,000 and the total amount payable from multiple health care providers and the Fund shall not exceed $500,000. La.R.S. 40:1299.42(B)(1) and (3)(b); Butler v. Flint Goodrich Hosp., 607 So.2d 517 (La.1992), cert. denied, ___ U.S. ___, 113 S.Ct. 2338, 124 L.Ed.2d 249 *641 (1993); Descant v. Adm'rs of Tulane Educ. Fund, 93-3098 (La. 7/5/94); 639 So.2d 246. The $500,000 cap applies to "injuries to or death of a patient." La.R.S. 40:1299.42(B)(1). The $100,000 cap on liability of a health care provider applies to "injuries to or death of any one patient." La.R.S. 40:1299.42(B)(2). For one patient and one injury there is but one cap. The amount recoverable for the injury in this case has already been paid.

DECREE
For the reasons assigned, the judgment of the court of appeal to the extent it found the Fund liable for an additional $408,000, is reversed and set aside. In all other respects, the judgment is affirmed.
LEMMON, J., concurs and assigns reasons.
VICTORY, J., concurs in result.
KIMBALL, J., dissents and assigns reasons.

[Filed August 30, 1995]
LEMMON, Justice, concurring.
I disagree with the majority's statement that the fault of two tortfeasors who separately cause a single injury should not be quantified. The majority bases this statement on broad language from the per curiam decision in Lambert v. United States Fidelity & Casualty Co., 629 So.2d 328 (La.1993).[1] Although the facts were not stated in the Lambert per curiam decision, the two tortfeasors in that case caused separate and divisible injuries (or a separate worsening of the original injury).[2]
In the present case, the negligence of each defendant was a substantial factor in the causation of the single injury incurred by plaintiff. Lombard v. Sewerage and Water Bd. of N.O., 284 So.2d 905 (La.1973). When there is a single injury caused by two tortfeasors' failure to act and action by either would have prevented the injury, fault must be quantified. The separate failures may have occurred under different circumstances, or one tortfeasor may have had a greater opportunity or greater capacity to prevent the damages and thus should bear greater responsibility. Quantification of fault should not be abandoned simply because action by either could have prevented the entire injury.
Nevertheless, this point of disagreement makes no difference in the present case. Because I agree with the majority that the present case does not give rise to two liability caps, I concur in the result.

[Filed June 16, 1995]
KIMBALL, Justice, dissenting.
We granted certiorari in this case to consider the correctness of the court of appeal decision which held that the plaintiffs are entitled to two separate $500,000.00 limitations on recovery. I write separately because I am unable to subscribe to the majority's analysis of the issue presented in this case.
In Louisiana, a medical malpractice claimant's recovery is limited by La.R.S. 40:1299.42(B)(1), which provides:
The total amount recoverable for all malpractice claims for injuries to or death of a patient exclusive of future medical care and related benefits ... shall not exceed five hundred thousand dollars plus interest and cost.
Although this court has never directly addressed the issue of when a plaintiff may be entitled to more than one $500,000.00 recovery,[1] R.S. 40:1299.42(B)(1) does not foreclose the possibility of more than one such recovery. See Stuka v. Fleming, 561 So.2d 1371, 1375 (La.1990) (Dennis, J., concurring in part, dissenting in part). Clearly, this statute does not mean that a malpractice claimant *642 is limited to a single, lifetime $500,000.00 recovery regardless of how many times he or she is the victim of malpractice. Indeed, when the word "all" is used in tandem with a plural noun such as "claims" in this case, "all" means "each and every one of." Websters New Universal Unabridged Dictionary (1992). As such, R.S. 40:1299.42(B)(1) should be interpreted to mean that the total amount recoverable for each malpractice claim for injuries to or death of a patient shall not exceed $500,000.00 plus interest and cost.
The question then becomes what forms the parameters of a "malpractice claim." Louisiana R.S. 40:1299.21(A)(8) defines "malpractice" in part as "any unintentional tort or any breach of contract based on health care or professional services rendered or which should have been rendered by a health care provider to a patient," and "tort" is defined in R.S. 40:1299.21(A)(7) in part as "any breach of duty or any negligent act or omission proximately causing injury or damage to another." Thus, a "malpractice claim" is a claim for a breach of duty or a negligent act on the part of a health care provider which causes damage to a patient. As Justice Dennis implied in Stuka, both the act (or acts) of malpractice and the resulting damage are relevant factors in determining how many $500,000.00 recoveries are available.
Writing separately from the majority in Stuka, Justice Dennis stated:
I am reluctant to conclude that the Fund may never be made to pay more than $400,000.00 for injuries contributed to by more than one health care provider-tortfeasor. Whether a single limitation applies to damages caused by plural defendants may depend on such factors as whether the defendants engaged in concerted action, whether the damages are severable, or whether the damages may be apportioned between tortfeasors.
561 So.2d at 1375. In my view, the type of multi-factor analysis Justice Dennis suggested in Stuka is the only appropriate mode of analysis in medical malpractice cases involving acts of malpractice by more than one health care provider-tortfeasor. Under the majority's analysis in this case, regardless of the number of acts of malpractice, a claimant is only entitled to one recovery so long as the injury or damage is indivisible. This invariably leads to absurd results. For instance, the logical extension of the majority's analysis is that if two physicians commit independent acts of malpractice which lead to a death, there can only be one $500,000.00 recovery because the injury (death) is indivisible. Under this same analysis, if two health care providers commit independent acts of malpractice leading to a divisible injury, and the patient survives, regardless of the time and place of these acts, the patient would be entitled to a second recovery.
These hypothetical situations, in my view, beg for the application of a multi-factor analysis in this type of case. I would expand Justice Dennis' four factor inquiry from Stuka and hold that when deciding whether to allow more than one $500,000.00 recovery, courts should analyze the factors Justice Dennis listed in Stuka as well the relationship between the acts of malpractice, i.e., did the acts occur during the same operation or procedure, or were they greatly separated in time and place. I believe this sort of how, when, and where inquiry can better solve some of the inevitable problems that are likely to arise in future cases involving multiple acts of malpractice than the majority's simple inquiry of whether the injury is divisible. A multi-factor approach would serve as a better analytical tool in cases such as this one, where the acts of malpractice occurred in different places and times, but would also be helpful in determining the number of available caps in a case where two health care providers commit independent acts of malpractice on the same patient while that patient is undergoing a single surgical procedure.
In conclusion, applying the multi-factor test to the case at hand, I believe two caps are available. Both doctors independently breached duties of care owed to Mrs. Turner. Dr. Massiha treated Mrs. Turner in 1984 and in 1986, while Dr. Ward treated her in 1985 and 1987. Thus, the acts of malpractice were not so closely related in time so as to bar a second recovery. Further, the doctors did not act in concert to cause her injuries because neither doctor recommended Mrs. Turner to the other. Also, as Justice Lemmon suggests in his concurrence, the fault of the parties in this case can be quantified. I agree with his statement that "[q]uantification *643 should not be abandoned simply because action by either could have prevented the entire injury." Finally, in a case involving the failure to diagnose cancer, even when the cancer is a slow growing kind, the longer the cancer is allowed to grow, the greater the damage. Moreover, the record in this case indicates that as the stages of cancer became more advanced, the treatment necessary to combat the advanced stage of cancer was more painful and expensive, and Mrs. Turner's chances of survival and recovery were greatly reduced. As such, I believe the damages in this case are severable. However, even if the damages are indivisible, the other factors strongly militate against the application of one cap in this case. Therefore, I would hold that the court of appeal correctly recognized that the plaintiffs in this case are entitled to two separate $500,000.00 limitations on recovery. Accordingly, I respectfully dissent.
NOTES
[*] Judge Henry L. Yelverton, Court of Appeal, Third Circuit, sitting by assignment in place of Justice James L. Dennis. Calogero, C.J., not on panel. Rule IV, Part 2, § 3.
[1] This is the correct spelling of his name. The caption is wrong.
[2] 94-29 (La.App. 5 Cir. 7/1/94), 641 So.2d 610.
[3] The 1987 amendment to La.Civ.Code art. 2324 now makes it necessary to quantify the fault of multiple tortfeasors to determine how much a plaintiff can recover from a particular defendant. However, Article 2324(B) is not applicable in this case for at least two reasons. First, this case occurred before the effective date of the 1987 amendment, and the amendment is not retroactive. Anderson v. New Orleans Public Service, 583 So.2d 829 (La.1991). Second, applying Lambert, 629 So.2d 328, when a tortfeasor is the legal cause of 100% of the victim's harm, his liability for 100% of the victim's damages is based on more than the imposition of a solidary obligation between joint tortfeasors, and an apportionment of fault cannot relieve him of responsibility for damages for which he is the legal cause. The amendment to La.Civ.Code art. 2324 has not changed this result.
[1] In Lambert, the plaintiff was injured in an automobile accident by the fault of the defendant in that action. The defendant sought reduction of the plaintiff's recovery because a second tortfeasor's malpractice in treating the original injury caused other damages being sought in a separate action. This court stated that the original tortfeasor (the only defendant in that particular case) was liable "for all of the victim's damages," but clearly meant that statement in contrast to the malpractice tortfeasor's liability only for the damages caused by the malpractice. Of course, both tortfeasors were solidarily liable for the latter damages.
[2] The Lambert decision demonstrates the problem raised by this court's increasing tendency to decide substantive legal issues without oral argument and without an authored opinion.
[1] Indeed, we specifically decided not to address this issue in Jones v. St. Francis Cabrini Hosp., 94-2217, (La. 4/10/95), 652 So.2d 1331 (La. 1995), a case involving two separate injuries (a hip separation and rectal perforation), because the total award fell under $500,000.00.