GOTHARD, Judge.
Plaintiffs, Salvador and Muriel Calcagno, filed this action on September 22, 1993 seeking damages from Nancy Decorte and her insurance company, State Farm Mutual Automobile Insurance Companies (State Farm), as a result of a vehicular pedestrian accident which occurred in Metairie on January 4, 1993. After a four day trial, the jury found no negligence on the part of defendant, Nancy Decorte. Consequently, the trial court rendered a judgment making the verdict of the jury the judgment of the Court. Plaintiffs appeal that judgment. We affirm.
According to testimony offered at trial, Salvador Calcagno is a 76 year-old retired gentleman who lives with his wife, Muriel, in Metairie, near the intersection of Veterans Highway and Power Boulevard. On the evening of January 4, 1993, Mr. Calcagno decided to take a walk after supper to purchase a lottery ticket. He crossed Veterans Highway at Downs Boulevard, purchased the ticket and attempted hto cross Veterans Highway again on his return home. He testified that he waited until he had a favorable light before he proceeded across the intersection in the pedestrian crosswalk. He successfully traversed the eastbound lanes to the neutral ground and continued across the westbound lanes. However, just as he reached the far side of the highway and placed one foot on the curb, he was struck by a car driven by defendant Nancy Deeorte, causing him to fall onto his outstretched left hand. He was taken by ambulance to East Jefferson Hospital where he was initially treated by the emergency room doctor.
Because of a serious injury to Mr. Calcag-no’s left thumb, the treating physician called in a hand specialist, Dr. Harold Stokes, to treat the patient. Mr. Calcagno went home later that night and took some pain medication prescribed for him by the doctors at East Jefferson. In accordance with Dr. Stokes’ instructions, Mr. Calcagno sought treatment at the Hand Center the following day where he underwent therapy for about eight weeks.
Mr. Calcagno stated that, in addition to the injury to his thumb, he experienced severe pain throughout his body as a result of the many scrapes and bruises sustained in the accident. Mr. Calcagno further testified that he incurred $4300.00 in medical bills as a result of the accident.
Dr. Harold Stokes, an expert in the treatment of hand injuries testified for the plaintiff. He stated that he was called to the emergency room at East Jefferson Hospital on January 4, 1993 by the attending physician to administer to Mr. Calcagno. Dr. Stokes testified that the patient had a very unstable interphalangeal joint of his thumb with apparent disruption and a laceration in the region of the palm over the first metacarpal. Dr. Stokes cleaned and dressed the wounds, stitched up the laceration and put on a splint. Dr. Stokes continued to treat Mr. *576 Calcagno for |4about two months. Dr. Stokes’ assessment is that Mr. Calcagno has a 40% permanent impairment in his left thumb. On cross-examination, Dr. Stokes admitted that some of the impairment could be attributed to pre-existing arthritis if the patient had limited motion in the thumb before this injury. However, he stated that the patient never mentioned having an arthritic condition in the thumb.
Muriel Calcagno testified that her husband left their apartment to purchase a lottery ticket on the evening of January 4, 1993. Shortly afterward her grandson came running up the stairs and called out to her to come quickly because her husband had been “knocked down.” She ran outside and discovered Mr. Calcagno sitting on the edge of the curb, in a dazed state. An ambulance arrived and took the Caleagnos to East Jefferson Hospital. Mrs. Calcagno also testified that she had to care for her husband for approximately eight weeks following the accident. During that time he was unable to care for himself and was in great pain.
The plaintiffs also offered testimony from their daughter, Carolyn Bridges. Ms. Bridges testified that she was on her way to her parents’ apartment on the evening of January 4, 1993 when she saw her father sitting on the curb inside the crosswalk. She got out of her car and ran over to help. She stayed with her father, comforting him during the wait for the ambulance. When it arrived, she followed the emergency vehicle to the hospital in her car. She left the hospital but returned later that evening to drive her parents home. She verified that her father was in considerable pain throughout the ordeal.
Kathleen Hamann, a registered nurse, testified that she was driving westbound on Veterans Highway in the far right lane on the evening of January 4, 1993. Ms. Ham-ann testified that on that evening it was rainy and the streets were slippery. As she exited Interstate 10 onto Veterans Highway, she saw the light at |5the intersection in question turn green and Veterans Highway traffic proceed across the intersection. She was the third car from the traffic light at the intersection at which the accident took place. It was at that time that Ms. Hamann saw a gentleman crossing the street and being struck by the first vehicle. The second car went around, but Ms. Hamann stopped her car behind the car which struck the pedestrian and put on her emergency flashers. She got her daughter out of the car to insure her safety, and then went over to see what could be done to help. She stated that Mr. Calcag-no seemed disheveled and upset. She noticed that he had an open fracture of one of his fingers from which he was bleeding. At this point another man came over to help and it was decided that Mr. Calcagno should be moved out of the street and onto the curb for his own safety. After that was done, Ms. Hamann remained on the scene to comfort both Mr. Calcagno and the driver of the vehicle which hit him. On cross-examination Ms. Hamann testified that she only saw Mr. Calcagno seconds before he was hit, as he entered her lane of traffic from the left side. In the split second that she saw him before he was struck, Mr. Calcagno was proceeding across the street in a “kind of hurried shuffle” which seemed unsteady. Ms. Hamann further testified that she witnessed the actual accident, that there was nothing Ms. Decorte could have done to prevent it, and that the light in their lane of traffic was green.
The defense presented testimony from Officer Ronald Walker of the Jefferson Parish Sheriff’s Office, who investigated the accident. Officer Walker testified that he arrived about ten minutes after the accident took place. He interviewed certain witnesses at the scene including one man who stated that he was traveling in the center lane westbound on Veterans Highway. That witness told the officer that, as he approached the intersection on a green light, he noticed Mr. Calcagno crossing the | (¡street in front of the car. The officer also spoke to a female who witnessed the accident. Additionally, Officer Walker briefly interviewed Mr. Calcagno at the hospital. Mr. Calcagno told the officer that a car struck him as crossed the street on a favorable light. Based on the information received from all of the witnesses, Officer Walker determined that westbound traffic on Veterans Highway had the green light.
*577 The defendant, Nancy Deeorte, testified that she was on her way to her mother’s home on the evening of January 4, 1993 to pick up her daughter. She was traveling westbound on Veterans Highway in the far right lane because she intended to turn right at Power Boulevard. The streets were wet and slippery, but it was no longer raining. As she approached the intersection of Veterans and Downs, the light was green and she was going with the traffic. Suddenly she saw a man crossing the street to the west of the crosswalk, who entered her lane from the center lane. She slammed on her brakes and swerved to the left to avoid him, but was unsuccessful. She “bumped” Mr. Calcagno with the side of her car and knocked him to the ground. When she hit Mr. Calcagno he was slightly to the right of the middle of her traffic lane. She testified that there was nothing she could do to avoid the accident. She did not see Mr. Calcagno in the dark.
Ms. Deeorte became very upset and ran into the Tiffin Inn to get help. Although she did not speak to Mr. Calcagno after the accident, Ms. Deeorte telephoned the hospital the next morning and ascertained that Mr. Calcagno had been treated and released.
Mr. Bruce Fuselier, also a witness to the accident, testified that he was traveling in the center lane of Veterans Highway heading in a westward direction. He was slightly behind Ms. Decorte’s car, which was traveling at a slower pace in |7the right lane. As he approached the intersection of Veterans and Downs, Mr. Fuselier saw a man crossing Veterans Highway. The man tried to speed up to get to the curb, but was struck by Ms. Decorte’s vehicle. Mr. Fuselier stated that when he first saw the pedestrian, he was walking a little to the west of the crosswalk, entering the right lane.
After the accident, Mr. Fuselier immediately called 911 on his car phone, parked his truck and went over to help. He stayed long enough to give the investigating police officer a statement.
On appeal, plaintiffs argue that the trial court erred in instructing the jury.
After giving several general jury instructions on the law of negligence, the trial court gave the following specific instructions:
A. Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway.
B. Between adjacent intersections at which traffic-control signals are in operation pedestrians shall not cross at any place except in a marked cross walk.
Under Louisiana law, a pedestrian is charged with the duty of observing approaching traffic when attempting to cross a street or roadway. Further, it is well established that a motorist may rely on the assumption that a pedestrian will not endanger himself by darting or otherwise suddenly stepping into the roadway or street into the path of moving vehicles.
A motorist has a burden to use more than an (sic) ordinary care to see what is ahead when approaching a pedestrian cross walk.
Every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a highway.
IsA motorist is not presumed liable in a pedestrian accident, rather the requirement remains that the pedestrian prove the negligence of the motorist. Thus, a motorist who exercises all reasonable care to protect a pedestrian who nonetheless suffers injury is not at fault.
A motorist is entitled to assume that traffic signals are understood and will be observed, and he is not required to anticipate that pedestrians will, in violation of law, enter an intersection on an unfavorable signal.
A motorist has a burden to use more than an (sic) ordinary care to see what is ahead when approaching a pedestrian' cross walk or an intersection. Motorist who approach intersection (sic) or crosswalk is charged with the duty to vigilantly watch for pedestrians.
*578 If you find that the plaintiff entered the intersection with a favorable light, then you can find that the defendant failed to yield the right-of-way. On the other hand, if you find that the defendant entered the intersection with a favorable light, then you can find that the plaintiff failed to yield the right-of-way.
A pedestrian as well as a motorist is charged with seeing what he could or should have seen in the exercise of due care and failure to do so constitutes negligence.
Plaintiffs make their claim in three assignments of error. The specific jury charges requested by the plaintiff are not contained in the record. However, in the transcript of the trial there is a colloquy which indicates that plaintiffs’ counsel requested the jury be charged that a pedestrian who enters an intersection with a favorable light has preempted it thereby rendering a motorist negligent for any injuries sustained. In support of that request counsel cited Davis v. Marshall, 467 So.2d 1211 (La.App. 2 Cir.1985); Dennison v. Commercial Standard Insurance Company, 243 So.2d 851 (La.App. 2 Cir.1971); and Tooke v. Muslow Oil Company, 183 So. 97 (La.App. 2 Cir.1938). Also, citing Baumgartner v. State Farm, 356 So.2d 400 (La.1978), plaintiffs’ counsel requested the jury be charged | ¡¿hat the first duty of an operator of a motor vehicle is to keep a sharp lookout to discover the presence of those in danger.
Plaintiffs further argue that the trial court erred in not charging the jury with the law embodied in LSA-R.S. 32:232(1)(a)[1] as applied in the cases cited above. Plaintiffs argue that without those instructions the jury could not properly determine the duty of the driver to the pedestrian.
We note that all cases cited by plaintiffs in this argument were decided before the legislature adopted comparative negligence, at a time when a finding of contributory negligence resulted in a complete bar to recovery by the plaintiff. To soften the effect of that rule on pedestrians struck while crossing in a crosswalk, the Supreme Court adopted a philosophy favoring the pedestrian. In Baum-gartner the court found that the defense of contributory negligence of a pedestrian was inapplicable to pedestrian-motor vehicle collisions when the pedestrian is in a crosswalk.
After the legislature adopted comparative negligence, the Supreme Court revisited this issue in Turner v. New Orleans Public Service Inc., 476 So.2d 800 (La.1985) and decided that the Baumgartner rule was no longer necessary, but found the pedestrian who was struck in a crosswalk only slightly at fault. In Aetna Casualty and Surety Co. v. Nero, 425 So.2d 730, 733 (La.1983), the Supreme Court discussed the Baumgartner rule and explained:
_That ruling was designed to compensate for the lack of mutuality of risks involved between motor vehicles and pedestrians. However, we did not impose absolute liability on a driver of an automobile simply when there is | ipa collision between a car and a person. Nor did we say that the motorist is to be held liable irrespective of fault on his part. In fact, in Baumgartner we clearly stated “that a motorist who exercises all reasonable care to protect a pedestrian, who nonetheless suffers injury, is not at fault.” 356 So.2d at 406. The operator of a motor vehicle must therefore be at fault in order to be held liable. This requisite was not eliminated by Baumgartner.
Adequate jury instructions fairly and reasonably point out the issues and provide correct principles of law for the jury to apply tu those issues. The instructions must properly reflect the law applicable in light of the facts of the particular case. Turner v. Massiah, 94-29 (La.App. 5 Cir. 7/1/94), 641 So.2d 610; affirmed in part, reversed in part on other grounds, 94-2548 (La. 6/16/94), 656 So.2d 636. In making those charges to a jury, a trial judge is not required to give the precise instructions submitted by either party, but must give instructions which properly *579 reflect the law applicable in light of the facts of the particular case. Prestenbach v. Louisiana Power & Light, 93-656 (La.App. 5 Cir. 4/14/94), 638 So.2d 234, 237-8; Jones v. Liberty Mut. Ins. Co., 568 So.2d 1091, 1094 (La.App. 5 Cir.1990), writ denied 572 So.2d 72 (La.1991). The manifest error standard is applicable to our review of the trial court’s charge to the jury. Unless the jury charges are so incorrect or so inadequate that the jury was precluded from reaching a proper verdict based on the law and the facts, this court may not overturn the decision of the jury. Turner, supra. We do not find such an inadequate or incorrect charge in this matter.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.

. (a) Vehicular traffic facing a circular green signal may proceed straight through or turn right or left unless a sign at such place prohibits either such turn. But vehicular traffic, including vehicles turning right or left, shall yield the right-of-way to other vehicles and to pedestrians lawfully within the intersection or an adjacent crosswalk at the time such signal is exhibited.