BROWN, Chief Judge,
concurs.
|/With this finding, we pretermit any consideration of the Authority’s remaining arguments.” At this point the opinion should have ended but it did not. Instead, in a single sentence the writer decided issues no longer in play, as follows: “Hence, if the district court found that the dog posed an unreasonable risk of harm, it was legal error to assign no liability to the owner, Ms. Fair; however, this determination is unnecessary, as the claim against the Authority fails for lack of actual knowledge. We would also note that the award, while on the high side, is subject to the much discretion of the judge or jury.”
21 C.J.S. Courts § 227:
Dictum is a statement on a matter not necessarily involved in the case, and is *1220 not binding as authority. Dictum is an opinion expressed by a court, but which, not being necessarily involved in the case, is not the court’s decision. It is an opinion expressed by a judge on a point not necessarily arising in the case, or a statement in an opinion not responsive to any issue and not necessary to the decision of the case ... Dictum, as a general rule, is not binding as authority or precedent. For purposes of stare decisis, dictum is not a holding. In federal Courts of Appeals, dicta are not binding on future panels.
The Supreme Court of the United States has said that dictum settles nothing. Jama v. Immigration and Customs Enforcement, 543 U.S. 335, 125 S.Ct. 694, 160 L.Ed.2d 708, 2 A.L.R. Fed. 2d 675 (2005). See also, Avants v. Kennedy, 00-0046 (La.02/02/00), 752 So.2d 150.
I disagree with the dicta gratuitously offered by the writer. The majority offers no methodology by which trial judges in future cases are to be guided.
| ¡(Under La. C.C. Art. 2321, the owner of the dog is strictly liable. The Louisiana Supreme Court observed in Veazey v. Elmwood Plantation Associates, Ltd., 93-2818 (La.11/30/94), 650 So.2d 712, 714:
Given the fact that we have held herein that the concept of comparative fault as it exists in Louisiana is broad enough to encompass the comparison of intentional acts and negligence in appropriate factual circumstances, we see no reason why the same sort of case-by-case analysis as that employed by the courts in a strict liability setting should not be employed by the courts in determining whether to apply comparative fault principles in cases where it is alleged that comparative fault exists among intentional tortfeasors (in this case a rapist) and negligent tortfeasors (landlord). That being said, public policy considerations inherent in the question of whether such a comparison should be made compel us to find, as did the trial court, that such a comparison should not be made in this particular case. (Emphasis added).
First, and foremost, the scope of South-mark’s duty to the plaintiff in this case clearly encompassed the exact risk of the occurrence which caused damage to plaintiff. As a general rule, we find that negligent tortfeasors should not be allowed to reduce their fault by the intentional fault of another that they had a duty to prevent. See Kansas State Bank & Trust Co. v. Specialized Transportation Services, Inc., 249 Kan. 348, 819 P.2d 587, 606 (1991).
Second, Southmark, who by definition acted unreasonably under the circumstances in breaching their duty to plaintiff, should not be allowed to benefit at the innocent plaintiffs expense by an allocation of fault to the intentional tortfeasor under comparative fault principles. Given the fact that any rational juror will apportion the lion’s share of the fault to the intentional tortfeasor when instructed to compare the fault of a negligent tortfeasor and an intentional tortfeasor, application of comparative fault principles in the circumstances presented in this particular case would operate to reduce the incentive of the lessor to protect against the same type of situation occurring again in the future. Such a result is clearly contrary to public policy. (Emphasis added).
In Turner v. Massiah, 94-2548 (La.06/16/95), 656 So.2d 636, 639, the Louisiana Supreme Court stated:
laThe damage here, Stage 2 breast cancer, cannot be apportioned between the two tortfeasors because the damage is not severable; it is indivisible.
In Turner, supra, the court also noted that:
*1221 Apportioning or separating the injuries caused by one of the doctors from the injuries caused by the other simply cannot be done. “No ingenuity can suggest anything more than a purely arbitrary apportionment of such harm.” Id.