630 So.2d 237 (1993)
Lawrence Paul TAYLOR, et al.
v.
UNITED STATES FIDELITY & GUARANTY INSURANCE COMPANY, et al.
No. 93-C-0019.
Supreme Court of Louisiana.
October 18, 1993.
Concurring and Dissenting Opinion October 22, 1993.
Rehearing November 18, 1993.
Ronald J. Fiorenza, Joseph J. Bailey, Provosty, Sadler & deLaunay, Alexandria, for applicants.
Samuel N. Poole, Jr., Gold, Weems, Bruser, Sues & Rundell, John G. McLure, McLure & Pickles, Camille J. Giordano, Giordano & Giordano, Alexandria, Harry D. Simmons, Amos H. Davis, David A. Szwak, Bodenheimer, Jones, Klotz & Simmons, Shreveport, for respondents.
Concurring and Dissenting Opinion of Chief Justice Calogero October 22, 1993.
Opinion Clarifying Judgment, but Otherwise Denying Rehearing November 18, 1993.
LEMMON, Justice.[*]
In this personal injury action, we granted plaintiff's application for certiorari primarily to review the decision of the court of appeal which granted the two defendants found to be joint tortfeasors a dollar-for-dollar credit, against plaintiff's total damages, for the entire amount plaintiff received in a pretrial compromise from a settlement fund contributed to by numerous parties. We hold that the court of appeal erred in allowing credit for any settlement funds received by plaintiff *238 other than the proportionate amounts of the settlement funds contributed by the defendants found to be joint tortfeasors in this case or by insurers on behalf of either of the joint tortfeasors.

Facts
The October, 1986 collision which gave rise to plaintiff's injury involved three vehicles: (1) a tractor owned and operated by Calvin Rollins, which was pulling a trailer owned by Tommy Walker and loaded with lumber being shipped by McGehee-Burkley Lumber Co. (MB Lumber); (2) a truck owned by Borden, Inc. and operated by Hillary Turner; and (3) a car owned and operated by plaintiff, in which his brother was a passenger. Turner and plaintiff's brother were killed in the accident.
Plaintiff filed the instant action in state court, while the survivors of Turner and of plaintiff's brother filed separate actions in the federal court. Named as defendants in the several actions were:
(1) Rollins and his insurer, General Agents Insurance Co.;
(2) Walker and his insurer, Canal Insurance Co.;
(3) MB Lumber and its insurer; United States Fidelity and Guaranty Insurance Co. (USF & G), along with its excess insurer, Northfield Insurance Co.;
(4) Borden and its insurer, the Insurance Co. of North America; and
(5) Department of Transportation and Development (DOTD).[1]
All parties entered into a settlement agreement under which the following parties contributed the listed sums to the settlement fund:

(1) General Agents (Rollins) $ 25,000[2]
(2) Canal (Walker) 25,000[3]
(3) USF & G (MB Lumber-primary) 326,407
(4) Northfield (MB Lumber-excess) 437,759
(5) Borden 185,000
(6) Plaintiff's insurer 25,000
 _________
 Total $1,024,166

Pursuant to the agreement, the federal court plaintiffs released all defendants and dismissed the federal action. Plaintiff received $50,000 as his share of the settlement fund, releasing all defendants except Rollins, Walker, General Agents, Canal and DOTD.
The present action proceeded to trial against the unreleased defendants. The trial judge apportioned fault seventy-five percent to Rollins, five percent to Walker, and twenty percent to plaintiff.[4] The judge fixed damages at $61,817, reduced on account of plaintiff's fault to $49,454.[5] Because the judge ruled that Rollins and Walker were entitled to a dollar-for-dollar credit against $49,454 for the $50,000 plaintiff received from the fund, the judge dismissed plaintiff's demand.
On plaintiff's appeal, the court of appeal affirmed. In an unpublished opinion, the court quoted from a federal admiralty decision and stated the general rule that "an injured person may partially settle a negligence claim with one of two alleged tortfeasors, sue and obtain a verdict for total damages against the nonsettling alleged tortfeasor, and receive judgment for the difference between the total damages and the settlement."[6] Because this is an incorrect statement *239 of the law of this state, we granted certiorari. 613 So.2d 960.
In his application for certiorari and in brief to this court, plaintiff makes only two assignments of error: (1) the lower courts erred in allowing a dollar-for-dollar credit for sums received by plaintiff from other defendants whom plaintiff released prior to trial, and (2) although General Agents and Canal have paid their policy limits into the settlement fund, the "out of state" insurance clause in their policies increases the limits on the face of the policy to the minimum amount required for a common carrier hauling regulated commodities in Louisiana.
Credit for Settlement Funds Received by Plaintiff
La.Civ.Code arts. 1803-04, which regulate a compromise between an obligee and one of several obligors as well as the relative liability of solidary obligors among themselves, provide in part as follows:
Article 1803.
Remission of debt by the obligee in favor of one obligor, or a transaction or compromise between the obligee and one obligor, benefits the other solidary obligors in the amount of the portion of that obligor. (emphasis added).
Article 1804.
Among solidary obligors, each is liable for his virile portion. If the obligation arises from a contract or quasi-contract, virile portions are equal in the absence of agreement or judgment to the contrary. If the obligation arises from an offense or quasi-offense, a virile portion is proportionate to the fault of each obligor. (emphasis added).[7]
Although Articles 1803 and 1804 were enacted in 1985 (before the accident at issue in this action), Louisiana courts have long recognized that when a plaintiff settles with and releases one of several joint tortfeasors, he thereby deprives the remaining obligors of the right to contribution against the released obligor. Accordingly, prior to the advent of comparative fault, proof by the remaining obligors of fault on the part of the released obligor gave rise to a reduction in the plaintiff's recovery against the remaining obligors in proportion to the total number of obligors found to be solidarily liable. Harvey v. Travelers Ins. Co., 163 So.2d 915 (La.App. 3d Cir.1964). And when the adoption of comparative fault introduced the concept of apportioning fault among joint tortfeasors who are solidary obligors, the rule emerged that a plaintiff's settlement with one solidary obligor reduces his recovery against the remaining obligors by the percentage of the proportionate fault of the released obligor.[8]Dill v. State of La., Dept. of Transp. and Dev., 545 So.2d 994 (La.1989); Buckbee v. Aweco, Inc., 614 So.2d 1233 (La.1993). The amount received by the plaintiff in settlement is irrelevant to the calculation of the amount of the reduction.[9]Joseph v. Ford Motor Co., 509 So.2d 1 (La.1987). Of course, the reduction applies only when the remaining defendants prove at trial that the released party was a joint tortfeasor and therefore solidarily liable. Raley v. Carter, 412 So.2d 1045 (La. 1982).
In the present case, Rollins and Walker, the unreleased tortfeasors, failed to prove any fault on the part of Borden or MB *240 Lumber.[10] Rollins and Walker are therefore not entitled to any credit for sums contributed to the settlement fund on behalf of these released defendants. Accordingly, there were no tortfeasors solidarily liable with Rollins and Walker, and reduction of plaintiff's recovery on account of his release of other defendants is not appropriate in this case.
Nevertheless, Rollins and Walker are each entitled to a credit against their obligation for any proportionate amount received by plaintiff from the settlement fund as a result of contributions to the settlement fund (1) by an insurer of Rollins or Walker or (2) by an insurer who made contributions to the fund on behalf of Rollins or Walker because Rollins or Walker qualified as an insured under the policy issued to another party.
It is undisputed that General Agents contributed $25,000 to the fund on behalf of Rollins and that Canal contributed $25,000 on behalf of Walker. To receive credit for contributions made by USF & G and Northfield, Rollins and Walker had the burden to prove that they qualified as insureds under MB Lumber's insurer's respective policies and that those insurers therefore made contributions to the fund on behalf of Rollins and Walker.[11]
The liability coverage of USF & G's Business Auto Policy issued to MB Lumber defined an insured as follows:
PART IVLIABILITY INSURANCE
D. Who is Insured.
1. You are an insured for any covered auto.
2. Anyone else is an insured while using with your permission a covered auto you own, hire[12] or borrow except:
a. The owner of a covered auto you hire or borrow from one of your employees or a member of his or her household.
b. Someone using a covered auto while he or she is working in a business of selling, servicing, repairing or parking autos unless that business is yours.
c. Anyone other than your employees, a lessee or borrower or any of their employees, while moving property to or from a covered auto.
3. Anyone liable for the conduct of an insured described above is an insured but only to the extent of that liability. However, the owner or anyone else from whom you hire or borrow a covered auto is an insured only if that auto is a trailer connected to a covered auto you own. (emphasis added).
Inasmuch as Rollins was using an "auto"[13] hired by and with the permission of the named insured, he was an insured for liability coverage under Section D2 of the policy if the vehicle was a "covered auto." None of the exclusions under Section D2 apply to Rollins.
Part II of the policy, providing which autos are "covered autos," states that the numerical symbols in Item Three describe which autos are covered autos, indicated by the symbol entered next to the coverage. Item Three, entitled "Description of Covered Auto Designation Symbols," describes "Symbol 1" as "ANY AUTO."[14] On the "Coverages" page of the policy, the symbol "1" appears as the designation symbol for liability coverage, indicating liability coverage for any auto.[15]
Plaintiff contends, however, that coverage of Rollins was excluded under the exception *241 in Section D3, which provides coverage only when the auto is a trailer connected to a covered auto owned by the named insured. This interpretation of Section D3 as a limitation on Section D2 is incorrect. Section D3 provides coverage for vicarious liability, and the exception contained therein is an exception only to that vicarious liability coverage, not to the omnibus coverage provided in Section D2.
We therefore conclude that Rollins was an insured under USF & G's policy. Moreover, Rollins was also an insured under Northfield's policy which provided excess coverage to an insured under the liability provisions of the primary policy.
Walker, however, did not qualify as an insured under either policy, because he was not using a covered auto with MB Lumber's permission. Walker was liable in the accident because he failed to properly maintain the running lights on his trailer which was being used by Rollins, and not because he was using the trailer, a condition necessary to bring him under the omnibus coverage of USF & G's policy.
In summary, Rollins is entitled to a credit for the proportionate amount of contributions to the settlement fund made by General Agents, USF & G and Northfield. Walker is entitled to a credit for the proportionate amount contributed by Canal. These credits are calculated by dividing the amount of each contribution by the total amount of the settlement fund and multiplying that percentage figure by the amount plaintiff received from the settlement, as follows:

 Rollins:
 General Agents$25,000/1,024,166 = 2.44% × $50,000 = $1,220 credit
 USF & G$326,407/1,024,166 = 31.87% × $50,000 = $15,935 credit
 Northfield$437,759/1,024,166 = 42.74% × $50,000 = $21,371 credit
 Total credit of $38,526.
 Walker:
 Canal$25,000/1,024,166 = 2.44% × $50,000 = $1,220 credit

Rollins was solidarily liable for 100 percent[16] of the $61,817 damages, reduced by $12,363 on account of plaintiff's fault and subject to a credit of $38,526 on account of the amount plaintiff received from the settlement fund proportionate to the contributions on his behalf. Rollins' liability to plaintiff is therefore $10,928.
Walker was only liable for five percent[17] of the damages, or $3,091, reduced by $618 on account of plaintiff's fault and subject to a credit for Canal's proportionate contribution to the settlement fund, $1,220. Walker's liability is therefore $1,253.
Coverage under Out of State Insurance Provision
General Agents and Canal have each paid the policy limits on the face of their respective policies into the settlement fund. Plaintiff contends, however, that this court should reform the stated limits of General Agents' and Canal's policies by increasing the coverage to the mandatory minimum amount of coverage required for common carriers operating in Louisiana. Plaintiff points to the "Out of State Insurance" provision in General Agents' and Canal's policies which increases the stated policy limits to conform to a motor vehicle responsibility law or a motor vehicle compulsory insurance law or any similar law when such a law requires a nonresident to maintain insurance greater *242 than that provided by the policy.[18] On the basis of this policy provision, plaintiff argues that La.Rev.Stat. 45:163D(1)(b),[19] requiring common carriers operating in Louisiana to provide liability insurance of $250,000 per person, is a "similar law" which called for upward reformation of the stated policy limits.
The insurance policy provision is designed to protect the insured who purchases the minimum amount of compulsory insurance in his home state, but causes damages with a motor vehicle in a state with a compulsory insurance or financial responsibility law which requires non-residents to maintain higher limits of minimum insurance, and the provision automatically increases the policy limits to the extent required by the state in which the accident occurred.[20] The compulsory insurance law in Louisiana, La.Rev.Stat. 32:861-65, requires every vehicle registered in this state to be covered by liability insurance in the amount required by La.Rev.Stat. 32:900B(2). The amount of liability insurance required by La.Rev.Stat. 32:900B(2) is $10,000 for one person and $20,000 per accident. General Agents and Canal both provided liability limits above these amounts.[21]
However, La.Rev.Stat. 45:163D is not the type of statute which requires a nonresident to carry a minimum amount of basic liability insurance in order to operate a vehicle in Louisiana. Rather, La.Rev.Stat. 45:163D commands the Public Service Commission to require common carriers to provide certain insurance in order to obtain a license to operate as a common carrier in Louisiana. This statute is a licensing statute that must be read with La.Rev.Stat. 45:163.1, which provided (at the time of the accident) that a motor carrier must secure a registration permit and file insurance certificates as required by the Commission before entering the state. Section 163D is therefore not a motor vehicle financial responsibility law or a motor vehicle compulsory insurance law or a similar law, as contemplated by the policy provision. We accordingly reject plaintiff's argument for increasing the stated policy limits because of the Public Service Commission's liability insurance requirements.

Decree
Accordingly, the judgments of the lower courts dismissing plaintiff's action are reversed, and judgment is rendered in favor of plaintiff and against defendant Rollins in the amount of $10,928, and in favor of plaintiff and against defendant Walker in the amount of $1,253. Plaintiffs' claims against General Agents and Canal, based on the out of state provisions of their policies, are dismissed.[22]
Costs are assessed against the defendants.
*243 ORTIQUE, J., concurs in part and dissents in part and assigns reasons.
CALOGERO, C.J., concurs in part and dissents in part and assigns reasons.
ORTIQUE, Justice, concurring in part and dissenting in part.
The facts are acceptably well stated in the majority opinion.
Let there be no mistake or misimpression regarding this Court's unanimity in declaring that there is no basis in law or our jurisprudence to grant to defendants, Tommy Walker and Calvin Rollins and their respective liability insurers, Canal Insurance Company (Canal) and General Agents Insurance Company, Inc. (General Agents) a "dollar for dollar credit" for the sum of $50,000.00 received by plaintiff, Lawrence Paul Taylor, in pre-trial settlements with the other defendants and their insurers in the federal court action. Since Taylor's settlement with Canal and General Agents was greater than the trial court award to him of $49,254.00,[1] the lower courts found that he was not entitled to any additional funds as a result of his victory in the trial court.
The resolution of the issue of entitlement to a credit and the amount of the credit to which a non-released defendant may claim, where a defendant contributes its policy limits into a general settlement fund, involves an analysis of the liability of solidary obligors and the application of LSA-R.S. arts. 1803 and 1804. It is well settled in our jurisprudence that when a plaintiff settles and releases one of two joint tortfeasors, reserving all of his rights against the other, the remaining tortfeasor is thereby deprived of his right to enforce contribution against the one who has been released. Since the plaintiff by his own act has deprived the unreleased tortfeasor of his right of contribution, he can recover from the unreleased tortfeasor only one half (prorata share) of the damages which he sustained. Harvey v. Travelers Insurance Company, 163 So.2d 915 (La.App. 3rd Cir. 1964); see also Buckbee v. Aweco, Inc., 614 So.2d 1233 (La.1993).
Subsequent to the Harvey decision, the legislature enacted LSA-C.C. art. 1803[2] which codifies the rule of Harvey, and provides as follows:
Remission of debt by the obligee in favor of one obligor, or a transaction or compromise between the obligee and one obligor, benefits the other solidary obligors in the amount of the portion of that obligor.
Surrender to one solidary obligor of the instrument evidencing the obligation gives rise to a presumption that the remission of debt was intended for the benefit of all of the solidary obligors.
LSA-C.C. art. 1804 provides in pertinent part as follows:
Among solidary obligors, each is liable for his virile portion. If the obligation arises from a contract or quasi-contract, virile portions are equal in the absence of agreement or judgment to the contrary. If the obligation arises from an offense or quasi-offense, a virile portion is proportionate to the fault of each obligor.
*244 These articles affect the resolution of the issue presented in this case. Canal and General Agents are entitled to a credit which represents the amount of the proportionate fault of the released defendants. Entitlement to a credit attaches upon proof that the party claiming the credit is a solidary obligor with the released defendants. This result is consistent with our jurisprudence which holds that where a claimant releases one of two joint tortfeasors, reserving all of his rights against the other, the remaining tortfeasor is thereby deprived of his right to enforce contribution against the released party. See Harvey, supra, 921 and Dill v. State of Louisiana, Department of Transportation and Development, 545 So.2d 994 (La. 1989). The determination of entitlement to a credit for percentage of fault attributable to the released defendants depends upon whether or not there is solidary liability among the defendants. Thus the negligence of the released defendants is an issue at trial, since the remaining tortfeasor is entitled to a reduction in award only if the released parties are proven to be joint tortfeasors. Harvey, supra.
Likewise and with equal emphasis, I declare that the majority opinion is solidly focused in its calculation of damages for which the respective defendants must accept responsibility. The pronouncement by the majority that the amount received by the plaintiff in settlement is irrelevant to the calculation of the amount of the reduction, is specifically and unqualifiedly supported by our LSA-R.S. arts. 1803-1804 and our jurisprudence in Dill v. State of Louisiana, Department of Transportation and Development, supra. Our rule of law is clear and unambiguous in allowing a credit against the amount of damages only for the proportionate amount that the released tortfeasor would have been cast in judgment after trial.
And I join with the majority in finding it unnecessary to reform the stated limits of the Canal and General Agents policies by increasing the coverage to the mandatory minimum amount required for common carriers operating in Louisiana. Plaintiff urges that La.R.S. 45:163 is compulsory motor vehicle law, or, similar law within the meaning of the policies. This writer pretermits consideration of plaintiff's argument that the Canal and General Agents policies should be reformed according to the minimum insurance required by the Louisiana Public Service Commission under La.R.S. 45:163 and the "out-of-state insurance" clauses of these policies. In the instant case this is neither mandated in law or equity, nor supported by the facts or the evidence. I would therefore reach the same conclusion, but for a different reason.
However, I am unable to find, after careful consideration of the record in the courts below any support for the majority to conclude that the defendants, Canal and General Agents, are relieved of their liability to the plaintiff.
First and foremost, the fact is undisputed: plaintiff, Taylor reserved his right to proceed in state court against the defendantsall four of them! Thus the defendants, Canal and General Agents were put on notice that plaintiff intended to seek additional damages against them. Having failed to take any action whatsoever, against the possibility that a state court would find the defendants liable for an amount up to $50,000.00, and that they were not joint tortfeasors with anyone, it is clear that defendants' insurers assumed a very clear and significant risk. See the rationale of Dill, supra, and of more recent vintage: Buckbee v. Aweco, Inc., 614 So.2d 1233 (La.1993).
Secondly, and most puzzling to this writer is the conclusion of the majority that once the insurance company tenders its policy limits in pre-trial settlement there can be no further exposure. I cannot fathom that this is a serious conclusion of this majority when the author of the majority opinion opines in footnote 9.
Thus, under the Louisiana statutes the plaintiff who settles shrewdly for a large sum with a defendant ultimately found to bear a small percentage of fault reaps the benefit of his negotiations. But the converse is also true, and when the plaintiff accepts in settlement less than the proportionate amount ultimately attributed to the released defendant, he bears the loss and receives less than his total damages.
*245 Are we to permit eager adjusters to tender policy limits to an undeserving claimant, and deny to a victim of defendant's (insured) negligence "his due" because the adjuster has exhausted the limits of liability under a viable insurance policy?
Third, search as you might, you will not find one shred of evidence which delineates with specificity for whose benefit the contributions by the various insurance companies were made. The record does not indicate that any stipulations were entered regarding this issue, or that any proof was adduced at trial relative to this issue. The only evidence adduced at trial which remotely relates to this issue is contained in the "Release and Settlement Agreement". The plain language of this agreement contradicts the assertion that the released defendants were contributing a specific portion ($25,000.00 or any other amount) to the fund to relieve Rollins or Walker of their liability to Taylor. The Release and Settlement Agreements by United States Fidelity & Guaranty Insurance Company, Northfield Insurance Company, Insurance Company of North America and Borden, Inc. which were entered into evidence do not provide any indication of contributions made on behalf of either Rollins or Walker.
Finally, there is no evidence in the record to support a finding that McGehee-Burkley or its insurers were solidarily liable with Rollins or Walker. The only defendants before this court, General Agents as insurer of Rollins and Canal as insurer of Tommy Walker neglected to prove the negligence of the released co-defendants. No evidence was adduced at the trial by either party to prove or negate liability on the part of the released defendants, as required under Raley, supra. There is no finding of liability by the lower courts on the part of the dismissed defendants as joint tortfeasors. General Agents and Canal are not entitled to a credit representing the proportionate fault of the released defendants, since they did not prove either negligence on the part of the these defendants, or their status as a solidary obligor with Rollins and Walker. However, these failings of defendants do not deny them the limited relief accorded by the jurisprudence applicable to the facts and circumstances of this particular case.
For these reasons, I respectfully dissent. I would hold the individual defendants, Walker and Rollins solidarily liable with their respective insurers, Canal and General Agents.
CALOGERO, Chief Justice, concurring in part and dissenting in part.
The consequence of this majority's opinion is to allow plaintiffs judgment against the insureds Calvin Rollins and Tommy Walker alone, while exonerating their liability insurers General Agents Insurance Company and Canal Insurance Company, respectively.
Admittedly, an insurance company which reasonably pays out on behalf of its insureds to the limits of its liability policy in advance of litigation has no further liability. See Holtzclaw v. Falco, Inc., 355 So.2d 1279 (La. 1978); Richard v. Southern Farm Bureau Casualty Insurance Co., 254 La. 429, 223 So.2d 858 (1969). This case, however, presents a different and distinguishable set of facts, where the very insurance companies, which have been shielded by the majority from further payment on behalf of their insureds, dissipated their policy limits in a court settlement shortly before a scheduled trial in federal court, a settlement wherein these plaintiffs were specifically permitted to reserve, with the assent of the two insurance companies and the federal court, their claims against these defendant insurance companies.
I believe Holtzclaw and Richard do not dictate the same result in this case. I would therefore address the question and likely find for plaintiffs on this point. Regarding the remainder of the opinion, I am in agreement. Accordingly, I concur in part and dissent in part.

ON REHEARING
PER CURIAM.
Motion for clarification granted. The judgment of October 18, 1993 is clarified to assess costs against the defendants cast in *246 judgment, Calvin Rollins and Tommy Walker. Otherwise, denied.
WATSON, J., not on panel.
NOTES
[*] Pursuant to Rule IV, Part 2, § 3, Watson, J. was not on the panel which heard and decided this case. See footnote in State v. Barras, 615 So.2d 285 (La.1993).
[1] Plaintiff and his insurer were also named as defendants in the federal court suits.
[2] The contributions by General Agents and Canal were the full amounts of their policy limits.
[3] See footnote 2.
[4] The judge found Walker negligent for failing to maintain the running lights on the sides of his trailer. Plaintiff's and Rollins' fault was attributable to the negligent operation of their vehicles. The judge further found that any negligence by Turner did not contribute to plaintiff's injuries and that DOTD was not at fault.
[5] The amount in the judgment was $49,254, but this clearly was a mathematical error.
[6] The quotation by the court of appeal from Billiot v. Sewart Seacraft, Inc., 382 F.2d 662, 665 (5th Cir.1967), may have been a correct statement of federal admiralty law. However, the Supreme Court of the United States has granted certiorari in McDermott Corp. v. Iron, 979 F.2d 1068 (5th Cir.1992), cert. granted, ___ U.S. ___, 113 S.Ct. 3033, 125 L.Ed.2d 721 (1993), to decide whether in a maritime tort action when the plaintiff has settled with some, but not all, defendants, the recovery of the plaintiff against the non-settling defendant should be reduced by the dollar amount of all previous settlements or by the settling defendants' proportionate share of the total damages proved at trial.
[7] See also La.Civ.Code art. 2324, providing limitations on liability of solidary obligors.
[8] The amount of each solidary obligor's virile share depends on the source of the obligation. La.Civ.Code art. 1804 cmt. (b). In the present tort action, the virile share is the proportionate degree of fault of each tortfeasor.
[9] The federal decision relied on by the intermediate court in the present case allowed a dollar-for-dollar credit, reasoning that a maritime plaintiff should not recover more than the damages determined at trial. The different rule set out in La.Civ.Code arts. 1803-04 allows a credit against the amount of damages only for the proportionate amount that the released tortfeasor would have been cast in judgment after trial. Thus, under the Louisiana statutes the plaintiff who settles shrewdly for a large sum with a defendant ultimately found to bear a small percentage of fault reaps the benefit of his negotiations. But the converse is also true, and when the plaintiff accepts in settlement less than the proportionate amount ultimately attributed to the released defendant, he bears the loss and receives less than his total damages. In either event, the nonsettling defendants are not liable for the percent of the total damages proportionate to the fault of the released tortfeasor.
[10] Plaintiffs alleged MB Lumber was at fault because of negligent hiring and supervision of the driver and negligent inspection of the vehicle, but neither plaintiffs nor the tortfeasors who seek reduction of plaintiff's recovery because of MB Lumber's fault proved any negligence at trial.
[11] In his petition plaintiff alleged that Rollins and Walker were employees of MB Lumber or, alternatively, were independent contractors covered by MB Lumber's insurance.
[12] The president of MB Lumber testified that his company owned no trailers capable of transporting lumber and that he had to hire tractors and trailers for that purpose.
[13] The policy definition of "auto" included "a land motor vehicle, trailer or semi-trailer designed for travel on public roads...."
[14] This is in contrast to "OWNED AUTOS ONLY", "HIRED AUTOS ONLY" and other designations.
[15] Other coverages, such as collision insurance, were designated as applicable only to "owned autos."
[16] The accident in this case occurred before the 1987 amendment to La.Civ.Code art. 2324, which limited solidary liability to fifty percent for each defendant or to the proportionate fault of the defendant who was more than fifty percent at fault. Touchard v. Williams, 617 So.2d 885 (La. 1993).
[17] Under La.Civ.Code art. 2324, Walker was only liable for five percent because his fault was less than that of plaintiff.
[18] The pertinent provision of General Agents' and Canal's policies provides:

B. Out of State Insurance: If, under the provisions of the motor vehicle financial responsibility law or the motor vehicle compulsory insurance law or any similar law of any state or province, a non-resident is required to maintain insurance with respect to the operation or use of a motor vehicle in such state or province and such insurance requirements are greater than the insurance provided by the policy, the limits of the company's liability and kinds of coverage afforded by the policy shall be as set forth in such law, in lieu of the insurance otherwise provided by the policy, but only to the extent required by such law and only with respect to the operation or use of a motor vehicle in such state or province; provided that the insurance under this provision shall be reduced to the extent that there is other valid and collectible insurance under this or any other motor vehicle insurance policy. In no event shall any person be entitled to receive duplicate payments for the same elements of loss.
[19] La.Rev.Stat. 45:163D(1)(b) provides:

D.(1) The commission shall require the following policies of insurance and indemnity bonds:
. . . . .
(b) Public liability and property damage insurance on trucks operated by both common and contract carriers providing coverage of two hundred fifty thousand dollars for injury or death to any one person not to exceed five hundred thousand dollars per occurrence, and ten thousand dollars property damage.
[20] Rollins was a resident of Mississippi.
[21] The Safety Responsibility Law also requires non-residents to give proof of financial responsibility after an accident. La.Rev.Stat. 32:875, 879.
[22] The dissenting opinion suggests that General Agents and Canal should be liable for more than their policy limits, apparently because they did not prove they exhausted their policy limits with a reasonable settlement made in good faith. Plaintiffs have never raised this issue at any stage of the proceedings, and there was no need for these insurers to defend against these unraised issues.
[1] The initial actions were filed in the United States District Court, Western District of Louisiana and eventually settled under an agreement wherein defendants contributed various amounts which were paid to the plaintiffs; however, Lawrence Taylor reserved his rights against the defendants, Rollins, Walker and their insurers.

Lawrence Taylor pursued his claim against the remaining defendants in the instant state court proceeding. No other claims against any other defendants were pursued by Taylor. After trial on the merits, the court dismissed DOTD on its motion for a directed verdict and apportioned fault among the following parties: 75% Calvin Rollins; 5% Tommy Walker; and 20% plaintiff, Lawrence Taylor. The trial judge awarded Taylor total damages in the amount of $61,817.00, subject to a reduction of 20% attributable to a finding by the trial court of plaintiff fault. Accordingly, the trial court entered judgment for plaintiff in the amount of $49,254.00. The trial court then ruled that Canal and General Agents were entitled to a dollar-for-dollar credit for their liability limits in the aggregate amount of $50,000.00. If Canal and General Agents are so entitled, the plaintiff receives nothing under the trial court decree.
[2] Enacted by Acts 1984, No. 331, § 1, effective January 1, 1985.