# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-1585

DALTON D. BROUSSARD, ET UX.

VERSUS

PROGRESSIVE SECURITY INSURANCE
COMPANY, ET AL.

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 75734-E
HONORABLE KEITH R.J. COMEAUX, DISTRICT JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of John D. Saunders, Marc T. Amy, and Billy Howard Ezell, Judges.

**REVERSED.**

Richard J. Petre, Jr.
Onebane Law Firm
Post Office Box 3507
Lafayette, LA   70502-3507
(337) 237-2660
COUNSEL FOR DEFENDANTS/APPELLANTS:
	Gateway Dirtworks, LLC
	QBE Specialty Insurance Company

John J. Erny, III
Casler, Bordelon & McGinty
2450 Severn Avenue, Suite 200
Metairie, LA   70001
(504) 832-4839
COUNSEL FOR DEFENDANT/APPELLEE:
	Progressive Paloverde Insurance Company

**Gretchen Heider Mayard**
**Katherine P. Martin**
**Martin Mayard, LLC**
**Post Office Box 81338**
**Lafayette, LA 70598-1338**
**(337) 291-2440**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **State Farm Mutual Auto Insurance Company**

**Scott A. Dartez**
**Perrin, Landry, deLaunay, Dartez & Ouellet**
**Post Office Box 53597**
**Lafayette, LA 70505**
**(337) 237-8500**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Dalton D. Broussard**
    **Mary S. Broussard**

**AMY, Judge.**

The plaintiffs pursued damages following an automobile accident in which their vehicle was struck by a truck involved in transporting material for another dirt works business. The plaintiffs sought damages from, among others, the hiring dirt works business and its insurer. The trial court ultimately entered summary judgment in favor of the plaintiffs, finding that the hiring business's insurance policy provided coverage to the driver insofar as he was driving a hired and/or nonowned automobile. The dirt works business and its insurer appeal. For the following reasons, we reverse.

## Factual and Procedural Background

This insurance coverage matter arose when the vehicle of Dalton Broussard and Mary Broussard was involved in an intersectional collision with a dump truck driven by Charles Belvin in Maurice, Louisiana. Deposition testimony indicated that the truck was used for the business purposes of C.K. Paul Trucking, a business venture of Mr. Belvin and his girlfriend, Yolanda Lumar. According to her deposition testimony, Yolanda created C.K. Paul to haul materials such as dirt, gravel, and asphalt. The dump truck was registered in the name of Latoya Lumar, Yolanda's sister.

On the day of the accident, Mr. Belvin was engaged in transporting material from Maurice to a construction area near Interstate 49 pursuant to an arrangement between C.K. Paul and Gateway Dirtworks, LLC. Gateway owner Robert Connolly explained that Gateway performed work for businesses who required dump truck service for the delivery of sand, gravel and asphalt for road work or construction. According to Mr. Connolly's deposition, Gateway owned three dump trucks for its business purposes. He explained that C.K. Paul had contacted Gateway's dispatcher, Barbara Ruiz, inquiring about work availability. He stated

that Ms. Ruiz handled the arrangements and that "[t]he arrangement with C.K. Paul or any other truck" would be that the truck would get ninety percent of the rate paid by the customer and Gateway would retain ten percent.

Following the accident, Mr. and Mrs. Broussard filed this suit seeking general and special damages. They filed suit against C.K. Paul, Mr. Belvin, Latoya Lumar and the subject truck's insurer Progressive Paloverde Insurance Company. The suit also named Gateway and its insurer, QBE Specialty Insurance Company, as defendants insofar as the plaintiffs asserted that Mr. Belvin was operating the dump truck under the control and direction of Gateway at the time of the accident.

QBE filed an initial motion for summary judgment, asserting that its policy issued to Gateway was inapplicable since Gateway was not Mr. Belvin's employer. Gateway joined in QBE's memorandum in support of the motion for summary judgment, asserting also that it was not Mr. Belvin's employer. The trial court denied the motion at that time.

Thereafter, the plaintiffs sought summary judgment and asserted that there was no genuine issue of material fact as to whether Mr. Belvin was an insured under the QBE policy or to whether the truck operated by him was qualified as a "nonowned auto" under that policy. Progressive and Mr. Belvin filed a similar motion for summary judgment. Gateway also filed its own motion for summary judgment, asserting that based on its evidence, including the affidavit of its dispatcher, Barbara Ruiz, that it was not Mr. Belvin's employer.

Following a hearing, the trial court granted summary judgment in favor of the plaintiffs and Progressive, determining that the QBE policy provided insurance coverage for Mr. Belvin. The trial court denied the motion for summary judgment

filed by Gateway and QBE.[1]  It also denied Gateway's and QBE's motion for reconsideration or, alternatively, a new trial.  Ultimately, the matter was designated as a final judgment for the purpose of an immediate appeal pursuant to La.Code Civ.P. art. 1915.

Gateway and QBE appeal, assigning the following as error:

(1)    The trial court erred in finding that a truck used by a subcontractor in doing work for a general contractor becomes the general contractor's "hired auto" under the general contractor's automobile liability policy even though there was no lease agreement for the vehicle; thus, the trial court erred in granting the summary judgment motions on coverage filed by plaintiffs and Progressive.

(2)    The trial court erred in granting summary judgment despite several genuine issues of material fact including (a) the factual issue of whether a vehicle driver was the general contractor's employee or subcontractor, an issue that the trial court cited in denying the general contractor's summary judgment motion that the driver was not an employee, and (b) the factual issue of whether driver Belvin was the owner of the truck that he was driving.

## Discussion

*Burden of Proof*

A trial court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law."  La.Code Civ.P. art. 966(B).  While the burden of proof remains with the mover to demonstrate that genuine issues of material fact do not exist, a moving party who will not bear the burden of proof at trial is not required to negate all essential elements of the adverse party's claim.  La.Code Civ.P. art. 966(C)(2).  Instead, the moving party must point out that "there is an absence of factual support for one or more elements essential to

---

[1] Gateway and QBE do not question the denial of their motion in this appeal.

the adverse party's claim, action, or defense." *Id.* Once the moving party has met this initial burden of proof, the burden shifts to the non-moving party to "produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial[.]" *Id.*

On review, an appellate court conducts a de novo review of motions for summary judgment, making the same inquiries as the trial court in determining the appropriateness of summary judgment. *Champagne v. Ward*, 03-3211 (La. 1/19/05), 893 So.2d 773.

*QBE Insurance Policy*

The QBE policy issued to Gateway provides that the following are insureds:

a. You for any covered "auto".

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

  (1)  The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

  (2)  Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

  (3)  Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

  (4)  Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

  (5)  A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

4

Further, in its "schedule of coverages and covered autos" section, the policy includes, among the covered autos, "nonowned 'autos' only." The policy defines "nonowned autos" as:

> Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs.

The trial court seemingly found coverage in light of several aspects of the above policy language. In reasons for ruling, the trial court explained:

> The owner of Gateway Dirt testified that Gateway hired Belvin to help with hauling dirt. Gateway informed Belvin about the work to be done, the pay he would receive and what needed to be done on Gateway job sites. Further, the evidence is uncontroverted that the truck driven by Belvin was not owned by Gateway but by his girlfriend's sister Latoya Lumar. The Court finds that there is no genuine issue of material fact that Belvin was hired by Gateway and that the truck he was driving qualifies as a non-owned auto.
>
> Further, the Court agrees with Broussard and Progressive that Belvin is an insured under the policy. Section b of the policy provides that "an insured is anyone using with your permission a covered auto you own, hire, or borrow." There is no genuine issue of material fact that Belvin became an insured because he was on a mission for Gateway and in furtherance of Gateway's business at the time of the accident. Therefore, under the terms of the policy, Belvin was an "insured' because he was driving a "covered auto" with the permission of Gateway and which Gateway hired to do their dirt hauling work.

Gateway and QBE question the trial court's determinations that the QBE policy afforded Mr. Belvin coverage due to its finding that the dump truck involved in the accident was a "hired" auto under the terms of the policy and, furthermore, that it afforded Mr. Belvin coverage insofar as the truck qualified as a "nonowned auto."

5

*Hired Auto*

Gateway and QBE first contest whether coverage was afforded by Subsection 1.b; in other words, whether Mr. Belvin was insured as a permissive user of an auto Gateway hired. The policy defines a "hired auto" as:

> Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households.

Although the trial court determined that Gateway had hired the subject truck, review of the parties' submissions indicates that genuine issues of material fact remain in this regard. We note that the trial court's ruling and the arguments in support of the motion for summary judgment assert that Gateway hired Mr. Belvin and that it hired the dump truck as well. However, the record lacks evidence permitting this definitive and specific ruling.

Instead, the depositions of Mr. Belvin, Yolanda Lumar, along with the affidavit of Barbara Ruiz, reference Gateway engaging C.K. Paul, generally, to provide services to Gateway's projects. No evidence referenced solely the truck being hired. Even the load tickets invoicing each load made by Mr. Belvin for Gateway are entitled C.K. Paul, and include the details of the daily load. Only one of those tickets indicates "Driver. Charles. Truck # ckp[sic] #1". Otherwise, the tickets reveal the date and the amount of the load. The accompanying checks from Gateway, list "Yolanda Lumar" as the payee. Neither does the record contain a contract referencing the hiring or leasing of this truck.

At a minimum, these facts constitute genuine issues of material fact as to whether Gateway "hired" this particular dump truck. The facts could arguably be construed so as indicate that Gateway and C.K. Paul entered into a straightforward

6

subcontracting arrangement for the totality of C.K. Paul's services rather than a particular contract to hire the subject truck.

The plaintiffs suggest that *Taylor v. United States Fidelity & Guaranty Insurance Co.*, 630 So.2d 237 (La.1993), is persuasive with regard to the "hired" auto issue. In *Taylor*, the supreme court considered whether a plaintiff was injured in an automobile accident which involved an owner-operated truck, pulling a trailer owned by another individual. The trailer was loaded with lumber owned by a lumber company. The supreme court remarked summarily that the owner-operator of the truck at issue in that case was driving an auto "hired" by the lumber company under the terms of the lumber company's policy.

Importantly, however, *Taylor*, 630 So.2d 237, did not focus on analysis of the "hired" auto issue. Instead, the court included only a footnote indicating the lumber company president testified that his company owned no trailers and it hired tractors and trailers for transportation. Rather, the issue considered in *Taylor* involved whether joint tortfeasors were entitled to a credit against a plaintiff's damages for the amount received in a pre-trial compromise. Accordingly, we do not consider *Taylor* as applicable here as it is not on point with the issue now before this court.

We observe here too that with regard to the "hired" auto issue, Subparagraph 1.b(1) excludes from coverage "[t]he owner or anyone else from whom you hire or borrow a covered 'auto.'" Certainly, the ownership of the truck is left unresolved by the submissions. While evidence indicated that the truck was registered to Yolanda's sister, other evidence placed the ownership of the truck into question. Particularly, portions of the testimony of both Mr. Belvin and Yolanda support a view that these two own the truck or that they own the truck along with Yolanda's

7

sister.[2]  This testimony raises the issue of whether Subparagraph 1.b(1) would exclude coverage as a "hired" auto due to the issue of ownership.

Further, Subparagraph 1.b(2) excludes coverage for "[y]our 'employee' if the covered 'auto' is owned by that 'employee' or a member of his or her household."  Recall that the trial court determined that Mr. Belvin was working as

---

[2] Mr. Belvin testified as follows with regard to the ownership of the truck when C.K. Paul was formed:

A   Well, I started driving trucks for myself.  I had got laid off from over there because the work was kind of slow.
Q   So you were laid off, and then you began driving a truck for yourself?
A   Yes, sir.
Q   Did you own your own truck?
A   Well, we owned the truck.  Yes, sir.
Q   Who is "we"?
A   Me and Yolanda Lumar.  Or you can say Yolanda.
Q   You all owned it together?
A   Well, she owned the truck.  I drove the truck.
Q   What truck was that?
A   A Mack truck.  It was a 1989 Mack.

He later testified that:

A   So we started a trucking business.  The truck became – Like I said, we saw a truck.  And we decided to buy the truck.  We went out and bought the truck.  And then, we went to do the paperwork on the truck.  At that particular time, when we went [to] do the paperwork on the truck, Yolanda's license at that particular time, it was – she had a flag or something on her license.  I'm not exactly sure about that.  So the sister was with us.  So we asked her if she could just go ahead and put the truck in her name until we get the stuff straight.

. . . .

Q   Yolanda had a flag on her license?
A   I think it was a flag or something on her license.  Yes.
Q   Right.  And because she had a flag on her license, when you all went to purchase the truck, Yolanda's sister, Latoya, volunteered to the truck in her name?
A   Yes.
Q   Am I understanding that correctly?
A   Yes.
Q   So tell me what happens.  This agreement between Yolanda and Latoya, did this happen when you all purchased the vehicle?
A   Yes.

Yolanda's responses to questioning also touched on the ownership issue:

Q   Your boyfriend, Mr. Charles Belvin, has testified earlier that you, Mr. Belvin, and your sister - -
A   Latoya.
Q   -- Latoya, purchased a vehicle?
A   Yes.

an employee of Gateway. This determination, alone, in light of the question raised regarding Mr. Belvin's and/or Yolanda's ownership of the truck[3] would have precluded summary judgment finding coverage as a "hired" auto. However, much like the ownership issue, the question of whether Mr. Belvin could be considered an employee of Gateway is not resolved by the parties' evidence. Rather, competing evidence reflected that no contract of employment was extended to Mr. Belvin, he worked when a Gateway project was available for C.K. Paul, and C.K. Paul paid Mr. Belvin after it was paid by Gateway. However, Gateway, through its dispatcher, offered some type of guidance regarding Mr. Belvin's performance on the job in that at least some type of directions were given regarding his route to the job site and his time of arrival at the site.

In light of the existence of genuine issues of material fact, entry of summary judgment finding that the QBE policy afforded Mr. Belvin coverage as a permissive user of the truck, as a "hired" auto, was in error.

*Nonowned Auto*

Gateway and QBE also question the trial court's determination that the QBE policy afforded Mr. Belvin coverage insofar as the truck was a "nonowned auto." While Gateway and QBE concede that the truck was a "nonowned auto" under the terms of the policy, they argue that the policy affords coverage for "nonowned autos" only to the named insured, Gateway, and not to Mr. Belvin.

Reference to the policy reflects merit in the appellants' position. Specifically, the QBE policy lists three types of "covered autos": "specifically described 'autos'"; "hired 'autos' only"; and "nonowned 'autos' only". Thereafter, in describing *who* is an insured, the policy lists:

---

[3] Mr. Belvin explained that he and Yolanda lived at the same residence, thus raising the question of whether the truck was owned by a member of his household in light of Subparagraph 1.b(2).

a. You for any covered "auto".

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow[.]

Thus, the policy insures the named insured, Gateway, for any covered auto, including a "nonowned auto" and *anyone else*, including Mr. Belvin, only if he or she is permissively using a covered auto which Gateway owns, *hires*, or borrows. As explained above, genuine issues of material fact remain with regard to whether Gateway hired the truck at issue.

The plaintiffs point to two cases addressing nonowned autos, *Huddleston v. Luther*, 04-1420 (La.App. 3 Cir. 3/9/05), 897 So.2d 887, *writ denied*, 05-0895 (La. 6/17/05), 904 So.2d 703, and *Perkins v. Guaranty National Insurance Co.*, 95-229 (La.App. 3 Cir. 11/2/95), 667 So.2d 559, *writ denied*, 96-0759 (La. 5/31/96), 673 So.2d 1033. Progressive cites the latter case as well. They contend that these support the trial court's determination that Mr. Belvin was insured in light of the "nonowned auto" status of the truck. However, neither *Huddleston* nor *Perkins* is applicable in this situation.

Instead, *Huddleston*, 897 So.2d 887, generally addressed whether a vehicle was a "nonowned auto" under the pertinent policy and not, particularly, whether "*anyone else,*" such as Mr. Belvin, was insured as the operator of a "nonowned auto." Also, *Perkins*, 667 So.2d 559, addressed the question of whether an employee, driving an admitted "nonowned auto," was used in pursuit of the insured's business affairs and whether UM coverage was therefore afforded to the employee under that policy. *Perkins* did not involve a question of whether a driver, who was not established to be an employee, was covered for the permissive use of a "nonowned auto" as in the present case.

10

We note, again, that Gateway and QBE concede that the truck was a "nonowned auto." They simply dispute whether Mr. Belvin is insured as an operator of such a vehicle. Under the terms of the policy, we conclude that the trial court inappropriately entered summary judgment, declaring Mr. Belvin to be an insured under the QBE policy. Accordingly, we reverse that ruling below.

### DECREE

For the foregoing reasons, the judgments entering summary judgment in favor of the plaintiffs, Dalton D. Broussard and Mary D. Broussard, and the defendant, Progressive Paloverde Insurance Company, are reversed. All costs of this proceeding are assessed equally to the plaintiffs-appellees, Mr. Broussard and Mrs. Broussard, and the defendant-appellee, Progressive.

**REVERSED.**