Judgment rendered January 15, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,226-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

GLORIA'S RANCH, L.L.C.                          Plaintiff-Appellee

versus

TAUREN EXPLORATION, INC.,                       Defendant-Appellants
CUBIC ENERGY, INC., WELLS
FARGO ENERGY CAPITAL, INC.
AND EXCO USA ASSET, LLC

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 541,768

Honorable Ramon Lafitte, Judge

* * * * *

GORDON, ARATA, MONTGOMERY, ET AL          Counsel for
By: Samuel E. Masur                       Defendant/Appellant
    Paul B. Simon                        Tauren Exploration

KEVIN W. HAMMOND, APLC
By: Kevin W. Hammond

WIENER, WEISS & MADISON                   Counsel for
By: Jeffrey W. Weiss                      Plaintiff/Appellee
                                          Gloria's Ranch, LLC

WALL, BULLINGTON & COOK, LLC
By: Guy E. Wall
    Paul E. Bullington
    Maurine Wall Laborde

LISKOW & LEWIS                            Counsel for Defendant/
By: Michael David Rubenstein              Appellee Cubic LA, LLC
    Kathryn Z. Gonski

* * * * *

Before WILLIAMS, MOORE, and THOMPSON, JJ.

**MOORE, J.**

Tauren Exploration Inc., the principal lessee, appeals a summary judgment that ordered it to pay Gloria's Ranch LLC, the mineral lessor, two-thirds of the damages, penalties and attorney fees for breach of a mineral lease. The case is on remand from the Louisiana Supreme Court to consider all the lessees' virile share liability. *Gloria's Ranch LLC v. Tauren Expl. Inc.*, 2017-1518 (La. 9/7/18), 251 So. 3d 392 (on rehearing). For the reasons expressed, we affirm.

## BACKGROUND FACTS (PRIOR PROCEEDINGS)

In 2004, Gloria's Ranch granted a mineral lease, covering 1,390 acres, to Tauren. The lease had a term of three years. Tauren performed exploration only down to the Cotton Valley formation. In 2006, Tauren assigned a 49% undivided interest in the lease to Cubic Energy Inc. Close to the end of the lease, in 2007, an operator hired by Tauren drilled three wells on the lease, one of which (the Gloria's Ranch 16-1) was intended to go all the way down into the Haynesville Shale, but it was completed only into the Cotton Valley. In 2008, another operator drilled a horizontal well into the Haynesville Shale on adjacent land that was later unitized with the Gloria's Ranch lease; still later, Tauren granted that operator a top lease. With the exception of the unitized well, none of these produced in paying quantities. In October 2009, Tauren sold its 51% interest in the lease to EXCO USA, but only as to rights below the Cotton Valley.

In December 2009, Gloria's Ranch sent letters to Tauren, Cubic, EXCO, and their lender, Wells Fargo, asking if the wells were still profitable. In response, Tauren admitted it had "miscalculated" some expenses, but asserted that the wells were still producing. Gloria's Ranch

disagreed, and sued all four for failure to comply with Mineral Code Arts. 206 and 207. In August 2014, Gloria's Ranch settled with EXCO.

Gloria's Ranch then proceeded to a bench trial against the remaining three defendants – Tauren, Cubic, and Wells Fargo. The district court rendered judgment in August 2015, essentially agreeing with Gloria's Ranch. The court found that the lease had indeed expired; the defendants failed to provide a recordable act to that effect; and the three defendants were solidarily liable to Gloria's Ranch. The court fixed damages of $22,806,000, penalties of $726,087, and attorney fees of $936,803.

All three defendants appealed. This court affirmed the judgment and awarded Gloria's Ranch additional attorney fees of $125,000 for having to defend the appeal. *Gloria's Ranch LLC v. Tauren Expl. Inc.*, 51,077 (La. App. 2 Cir. 6/2/17), 223 So. 3d 1202.

All three defendants applied for writs to the Supreme Court. In an original opinion, the high court held that the lender, Wells Fargo, was not liable as a lessee, under the Mineral Code; reduced the penalty to $484,058; and reduced the appellate attorney fee to $50,000. However, it found a "clear admission" that Tauren's management knew of the obligation to pay royalties and did not pay them. It affirmed the solidary liability of Tauren, Cubic, and EXCO. *Gloria's Ranch LLC v. Tauren Expl. Inc.*, 2017-1518 (La. 6/27/18), 252 So. 3d 431.

Tauren applied for rehearing, which was granted in part. The court remanded the case "for the trial court to consider the effect of the reversal of Wells Fargo's liability has on the award, particularly as it relates to the virile share accounted for in the EXCO settlement." *Id.*, 2017-1518 (La. 9/7/18), 251 So. 3d 392.

2

## ACTION OF THE TRIAL COURT

Back in the district court, Gloria's Ranch filed the instant motion for summary judgment or, in the alternative, to set virile shares. It argued that a straight-up "per head" allocation was inappropriate, or else the Supreme Court would have ordered this. Gloria's Ranch reasoned that the high court must have intended to take the lessees' bad faith into account, and on this basis suggested that Tauren was two-thirds liable.

Cubic filed a limited response to the motion for summary judgment. This asserted that Cubic had filed a voluntary petition for Chapter 11 bankruptcy in December 2015, after the district court's judgment, but that the Confirmation Order, signed in February 2016, contained a special provision, ¶ 131, that exempted the Gloria's Ranch litigation.[1]

Tauren opposed the motion for summary judgment, arguing that Gloria's Ranch settled with EXCO pretrial and with Cubic posttrial; under La. C.C. art. 1803, Tauren should get the benefit of these settlements and owe only one-third.[2]

The parties proceeded to a hearing, limited to argument, over two days in February 2019. At the close, the district court stated, "It was my intent for it to be equal and I'm not going to change from it. Virile shares

---

[1] ¶ 131 (a) provided that "nothing in the Plan Agreement shall, or shall be deemed to, alter, modify, release, limit, impair, or otherwise affect in any way whatsoever any of Gloria's Ranch, L.L.C.'s rights, claims * * *, causes of action * * * and/or defenses of any kind whatsoever * * * including any and all claims Gloria's Ranch, L.L.C. has, may assert, or may have asserted against any Non-Debtor Entity" in the suit against Tauren. ¶ 131 (f) added, "For the avoidance of doubt: (i) notwithstanding anything to the contrary contained in the Plan, nothing in the Plan releases, impairs, or otherwise affects in any way any Person's or Entity's rights, Claims, Causes of Action and/or defenses of any kind whatsoever" and "provided further, however, that the solidary or other liability of any Non-Debtor Entity under the Caddo Judgment is not modified, diminished or otherwise affected in any manner whatsoever[.]"

[2] Tauren filed notice that it, too, had filed Chapter 11 bankruptcy, in June 2016.

are to be split one-third, one-third, one-third between the remaining three, Cubic, Tauren and EXCO." Two weeks later, however, the court signed a judgment in favor of Gloria's Ranch and against Tauren, awarding the plaintiff "**two-thirds (2/3)** of" the damages affirmed by the Supreme Court (double emphasis in original).

Tauren has appealed, raising two assignments of error.

### TAUREN'S ARGUMENT

By its first assignment of error, Tauren contends that the Confirmation Order in Cubic's bankruptcy was a compromise between Gloria's Ranch and Cubic, and not a simple release of Cubic by operation of bankruptcy law. Tauren submits that this effected the release of an insolvent debtor, Cubic, under La. C.C. art. 1803, which must "benefit the other solidary obligors."[3] It further argues that there is no "insolvency exception" to Art. 1803. *Farbe v. Casualty Reciprocal Exch.*, 2000-0076 (La. 7/6/00), 765 So. 2d 994; *Abadie v. Metropolitan Life Ins. Co.*, 00-344 (La. App. 5 Cir. 3/28/01), 784 So. 2d 46, *writs denied*, 2001-1533 et seq. (La. 12/14/01), 804 So. 2d 642-644, *cert. denied sub. nom. Territo v. Adams*, 535 U.S. 1107, 122 S. Ct. 2318 (2002). It suggests that this code-based reduction is fair because Gloria's Ranch got concessions from Cubic, and Tauren got the detriment.

By its second assignment of error, Tauren argues that a loss arising from the insolvency of a solidary obligor should be borne proportionately by all other solidary obligors (including those with whom the plaintiff has already settled) instead of solely by a nonsettling obligor. Tauren concedes that its posture is poor under La. C.C. art. 1806: "A loss arising from the

---

[3] In its brief, Tauren refers to, without quoting, "Civil Code article 1804," but tenor of the argument shows that Article *1803* was intended.

4

insolvency of a solidary obligor must be borne by the other solidary obligors in proportion to their portion." However, it argues that Art. 1803, Revision Comment (d), is more apposite to the case: "In case of insolvency of a solidary obligor after the obligee has remitted the debt in favor of another, the loss must be borne by the obligee." Although the precise situation has never been litigated, Tauren argues that it is recognized by authorities in the field, Saúl Litvinoff & Ronald J. Scalise Jr., 5 La. Civ. Law Treatise, *The Law of Obligations*, 2 ed. (2001), § 7.83:

> The obligee who remits the debt in favor of one of his solidary obligors shares in the loss resulting from the insolvency of another by losing the amount the remitted obligor would have had to contribute had he not been favored by a remission of the debt.

Tauren submits that this scenario perfectly fits the facts of the case: Gloria's Ranch settled with EXCO; then Cubic became insolvent; thus, Cubic's portion must be allocated to the other solidary obligors.

## DISCUSSION

The Supreme Court exonerated Wells Fargo but found that Tauren, Cubic, and EXCO were solidarily liable for the breach of Mineral Code obligations. The court also recognized that EXCO had settled with Gloria's Ranch pretrial. The court therefore directed the district court to consider the effect of reversing Wells Fargo's liability on the virile share accounted for in the EXCO settlement.

The settlement of claims with one solidary obligor is regulated by La. C.C. art. 1803:

> Remission of debt by the obligee in favor of one obligor, or a transaction or compromise between the obligee and one obligor, benefits the other solidary obligors in the amount of the portion of that obligor.

Obviously, the settlement with EXCO reduced Gloria's Ranch's recovery by that share of the debt, one-third. *Taylor v. U.S. Fidelity & Guar. Ins. Co.*, 630 So. 2d 237 (La. 1993); *Bridges v. State*, 32,018 (La. App. 2 Cir. 6/16/99), 738 So. 2d 1149. The district court did not err in finding the two remaining obligors, Tauren and Cubic, solidarily liable for two-thirds of the obligation.

The Supreme Court was not aware of Cubic's bankruptcy, but this fact was asserted by Cubic in filings after the case returned to the district court. The appellate court is required to render "any judgment which is just, legal, and proper upon the record on appeal." La. C.C.P. art. 2164. The fact of Cubic's bankruptcy, therefore, must enter our consideration.

The bankruptcy of a solidary obligor is regulated by La. C.C. art. 1806:

> A loss arising from the insolvency of a solidary obligor must be borne by the other solidary obligors in proportion to their portion.
> Any obligor in whose favor solidarity has been renounced must nevertheless contribute to make up for the loss.

The underlying principle of solidary liability is to ensure that the injured plaintiff receives full recovery. *Touchard v. Williams*, 617 So. 2d 885 (La. 1993); *Williams v. Placid Oil Co.*, 2016-839 (La. App. 3 Cir. 8/2/17), 224 So. 3d 1101, Prod. Liab. Rep. (CCH) ¶ 20,117, *writ denied*, 2017-1501 (La. 11/17/17), 229 So. 3d 929. The primary effect of solidary liability is that any such obligor may be made to pay the judgment in full for other defendants who are insolvent, unknown, or absent. *Dumas v. State*, 2002-0563 (La. 10/15/02), 828 So. 2d 530. A plain reading of Art. 1806 shows that Gloria's Ranch, after Cubic declared bankruptcy, became able to enforce the whole obligation from the remaining solidary obligor, Tauren.

6

Scholarly writers support this result. "The insolvency of one is a problem for the other solidary obligors, who, in contribution, must make up for the portion of the insolvent." Litvinoff & Scalise, *op. cit.*, § 7.83. As Profs. Litvinoff and Scalise elaborate:

> Thus, if A, B, and C are solidary obligors of X for a debt of three thousand dollars, and X renounces solidarity in favor of C, then * * * A and B will remain solidarily bound to X for two thousand dollars. If B is insolvent, then A will owe two thousand dollars to X and * * * bear the entire burden of the loss resulting from B's insolvency.

This simplified example perfectly captures the essence of the dispute herein. We perceive no legal or factual error in the district court's result.

We find no manifest error in the district court's apparent conclusion that Cubic's bankruptcy was not a compromise with Gloria's Ranch and thus is not treated as a remission of debt under Art. 1803 or its Revision Comments. Admittedly, there are certain portions of the Confirmation Order that appear to exempt and preserve Cubic's rights and claims against Gloria's Ranch, such as ¶ 131 (a) and (f). Another, however, deems all such claims expired, terminated and abandoned, ¶ 131 (b),[4] and the overall tenor of the document is to secure protection for Cubic's insolvency, and not to remit, transact, or compromise the debt.

With this conclusion, we need only briefly address the substance of Tauren's second assignment of error. Because the Confirmation Order was not a transaction or compromise, there is no application of the Revision Comment to Art. 1803. Even if it were a transaction or compromise, there is

---

[4] ¶ 131 (b) provided that "on the Effective Date * * * any interest of the Cubic Asset Debtors in, to or under the GR Lease (including but not limited to 51% of the shallow rights under the GR Lease) * * * shall be deemed expired, terminated and abandoned * * * and shall not vest in the applicable reorganized Cubic Asset Debtors or any Reorganized Debtor, and [those entities] shall not retain the Cubic Asset GR Interests or any interest in or be obligated * * * under the GR Lease or have any liability therefor."

7

no justification for considering a revision comment as a persuasive source or interpretive aid to a different code article.  *Ramirez v. Fair Grounds Corp.*, 575 So. 2d 811 (La. 1991); *Stewart v. Hare*, 42,972 (La. App. 2 Cir. 2/20/08), 976 So. 2d 856, *writ denied*, 2008-0621 (La. 5/16/08), 980 So. 2d 709.  Given the plain reading and simple application of the text of Art. 1806, we decline to apply the Revision Comment to Art. 1803.  This assignment of error lacks merit.

## CONCLUSION

For the reasons expressed, the judgment is affirmed.  All appellate costs are to be paid by Tauren Exploration Inc.

**AFFIRMED**.